GEORGE MOODY *against* WILLIAM C. WALKER.

APPEAL *from Saline Circuit Court.*

Where the words of a bequest pass a present interest, the share of the first devisee vests *sub modo*, subject to be divested on contingency.

If a legacy be given, and no time of payment be expressed in the will, or it be directed to be paid at twenty-one, the legacy vests, subject to be divested in the event of his dying under the age of twenty-one. And when interest is given, it vests the principal.

If there is a gift of the principal, unconnected with the time of payment, then the legacy vests. If there is no gift, except at the time of payment, then it does not vest until the time arrives; and if it never arrives, the legacy is lapsed.

Where the words of a bequest are, "I give and bequeath to my daughter N. my negro girl S.," with a subsequent proviso, that in case of the death of either of the children, before arriving at lawful age, or without heirs, the legacy bequeathed to the deceased one, to go to the surviving one; this was a vested legacy.

It is essential to the validity of an executory devise, that it cannot be defeated by the first taker. If the absolute right of property is given to the first taker, the limitation over is void. The absolute right of ownership carries with it the full power of disposing of the property.

Chattels or money may be limited over after a life-interest, but not after a gift of the absolute property; nor can there be an estate tail in a chattel interest. The same words which, under the English law, would create an estate tail as to freeholds, give the absolute property as to chattels.

It is correctly laid down, that the use of a chattel may be devised to one for life, with remainder to another, and the demise of the remainder is valid: but the devise for life must be clear and explicit; and the intention of the testator to give only a life estate must be undisputed.

By the devise in the present case, (as quoted above,) the absolute property in the negro is first given, and the subsequent attempt at a limitation is void.

An *executory devise* is a disposition by will of a future interest in lands or chattels, not to take effect at the testator's death, but limited to arise at some future contingency. A more limited definition is, that it is such a limitation of a future estate or interest in lands or chattels, as the law admits in the case of a will, contrary to the rules of limitation in conveyances at common law.

All future limitations over in wills, which are consistent with the rules of the common law, respecting contingent remainders in a deed, are, in a will construed contingent remainders.

As an executory devise could not be barred by fine and recovery, it became necessary, to prevent perpetuity, that the bounds and limits should be prescribed, beyond which it should not extend.

These bounds and limits are, that the devise over must vest within the compass of a life or lives in being, and twenty-one years and nine months thereafter.

And if an executory devise is limited on an event which *may* not happen within that period, as, upon a general failure of heirs or issue, it is void. It is of no importance how the fact turns out. It is void at the commencement, if the event on which its existence depends *may* exceed those limits.

An executory devise differs from a contingent remainder in three material points: *First:* It needs not a particular estate to support it: *Second:* By it a fee simple or any less estate may be limited after a fee: *Third:* By it the remainder of a chattel interest may be limited after a particular estate for life has been created.

By will a fee may vest without words of inheritance, and an estate tail may be created by executory devise without words of procreation.

An executory devise is considered in the light of a limitation of a use; and is to be construed with as much favor and benignity as is consistent with the rules of law.

A testator cannot make a devise contrary to law : and where, in a devise, words are used which have a particular, precise and definite meaning, they will be construed according to their legal effect.

The proper words in a grant or devise, to create an estate tail, are " to the grantee, and the heirs of his body lawfully begotten." Such a devise of a chattel interest, in England, passes the entire property.

The words " die without issue," or " die without leaving issue," in a devise of land for life, or in fee, with remainder over, have always been held to mean an' indefinite failure of issue : and the rule of construction is the same, with respect to personal as to real property.

The distinction between the words, " *die without issue*," " *die without leaving issue*," and "*without heirs lawfully begotten*," as applied to real and personal estate, is exploded,

The rule is now well settled in England, that where the words used would give an estate tail in real estate, they give the absolute property in personalty, unless there is something in the will to show that the testator intended to tie it up.

The decision of the Court of Errors of Kentucky, in *Moore vs. Howe, Brashears vs. Macy*, and *Moseley vs. Corbin*, overruled.

Consequently, a devise of a negro to A. and a negro to B., and if either of them die before arriving at lawful age, or without issue lawfully begotten of their bodies, means an *indefinite* failure of issue, and the limitation over is void, unless there are some other words in the will evidently restricting and limiting their general meaning.

If, in such case, the limitation over be, " then the property bequeathed to the deceased one shall go to the surviving one," if the words " surviving one" will make a definite failure of issue, it must be on the ground that the contingency was confined to the lifetimes of A. and B.

The term " *survivors*" is now well settled to have a restricting power, and to limit the contingency, otherwise too remote, to a definite failure of issue.

Upon the death of A., therefore, leaving issue, but B. surviving him, the property bequeathed to B. vested absolutely, although she afterwards died under age and without issue—and upon her death the property went to *her* heirs, and not to the heirs of A.

By the laws of Kentucky no person, male or female, is competent to devise real estate or slaves by will.

By the laws of Kentucky, up to and after the year 1800, upon the death of an intestate, leaving no father, the slaves went to her mother, and her brothers and sisters, or their descendants, share and share alike, in equal and ratable proportions.

Walker, by his next friend, filed his bill in the court below, in which he stated that his grand father, William Walker, of Green county, Kentucky, died in the winter of 1801, or spring of 1802, having previously made his will ; whereby, among other devises he devised to his son Thomas, father of the complainant, a negro boy Billy; and to his daughter Nancy a mulatto girl Sarah, and then added, "if either the said Thomas or Nancy Walker die before they arrive at lawful age, or without heir, lawfully begotten of their body, that the surviving one have that part of my estate bequeathed to the deceased one."

The bill further stated that Nancy Walker died when about 19 years of age, without marriage or issue; and that complainant's father,

Thomas, died at the age of twenty-six, having first married, and leaving complainant, his only child, an infant: that when Nancy died she was living with her mother, Elizabeth Walker, and had in her possession the girl, Sarah, and her increase: that some years before Nancy's death, her mother intermarried with the appellant, Moody, and that Moody had possession of the slave, Sarah, and her increase, ten or eleven in number. There are other allegations in the bill not necessary to be introduced here.

Upon this state of case, the complainant prayed a decree for the slaves and their hire, and a writ, called by him a writ of *ne exeat*, to compel the appellant to give security for the forthcoming of the slaves; and to authorize the Sheriff, in default of such security being given, to take and hire out said slaves. This writ issued according to the prayer of the bill.

At the return term, Moody moved to dismiss the suit, because Walker was not present in court to acknowledge Cook as his next friend, nor had he done so. The complainant's counsel at the same time offered a power of attorney executed by said Walker after his arrival at 21 years of age, authorizing one Burton to prosecute the suit in his name, and moved that Walker be permitted to prosecute in his own name. Both motions were overruled.

The defendant below then demurred to the bill, and his demurrer was overruled—and it being proved that he was a lunatic, a guardian was appointed, by whom he answered. By the answer he admits the death of William Walker the making of his will; but does not admit that said William Walker was of sound mind when he made the will, nor that the same was duly executed and proven, nor whether he died without altering or revoking the same. He states that he does not know at what age Thomas Walker died, or whether the complainant is his son; but avers that Nancy Walker died after she reached the age of eighteen years, to wit, at about the age of nineteen years, and *after the death of Thomas Walker*, and without marriage or issue. He admits his intermarriage with the mother, and possession of the slaves; and avers that Nancy, on the 23d of April, 1817, after she arrived at the age of eighteen years, made her will, by which she bequeathed to her mother, appellant's wife, the negro woman, Sarah, and her in-

crease.    And admits that the mother has departed this life—and re-asserts that there is no equity in the bill.    The answer was filed May 6th, 1838.

At February term, 1839, the appellant moved for a decree for want of a replication, which motion was overruled, and he excepted.    He then objected to the sufficiency of the proof of the marriage of the complainant's father and mother, and his objections were overruled, to which he excepted.    He then moved to strike out such parts of certain depositions as were irrelevant, and as stated facts from information, understanding and hearsay; and also to reject the same depositions *in toto*, because there was no sufficient showing that they had been taken before a justice, duly commissioned and qualified; which motions were overruled, and he excepted.

No replication was filed, and the court decreed the slaves to the complainant.

PIKE, for appellant:

The appellant contends that the court below should have dismissed this suit, originally, upon his motion.    By the Territorial statute, a suit by a minor was not authorized to proceed, except by the next friend acknowledging in open court that he permitted his name to be used, and by the minor agreeing to the same.    That the complainant's attorney offered a power of attorney from Walker, authorizing Burton to proceed with the case in his name, makes no difference, because no proof was offered that Walker had reached full age; in default whereof the power of attorney was inoperative. *Dig*. 429.

2nd. The court should not have heard the case upon the depositions taken.    The replication should have been filed within four days after answer filed; all testimony taken before replication filed, was irregularly taken.    *Dig*. 112.

And this brings us to a principle which we desire to state at the outset; and that is, that inasmuch as the complainant filed no replication, he admitted the whole of the answer to be true—as well that part in avoidance of the will, as that part responsive to it.    This is a principle of vast importance in this case; and it is amply sustained by authority.    It is of peculiar importance, because the depositions

are made no part of the record, are irregularly taken before replication filed, and cannot be considered here at all. We are left, therefore, to look only at the bill, answer and exhibits—and the complainant, by declining to reply, has admitted the answer to be true, and rests his case upon the equity to be deduced from the state of facts apparent in bill and answer combined. See upon this point, *Story Eq. Pl.* 673, 674; *Cooper Eq. Pl.* 328, 329; 1 *Newland Ch. Pr.* 250; *Gilbert For. Rom.* 45.

The following facts, then, which are all it is necessary to state, stand admitted on the record. William Walker, the ancestor, by will, devised one slave to his son Thomas, and one to his daughter Nancy, and provided that if either of the two should die before arriving at lawful age, or without issue lawfully begotten, the *surviving one* should have the slave bequeathed to the *deceased one.* Thomas died first, leaving a son who is the complainant. Nancy died *after* Thomas, and after reaching the age of eighteen, without issue, having devised the slave, which she held under her father's will, to her mother, the wife of the defendant below. For this slave, and her increase, the suit is brought.

The question therefore is whether upon Thomas' death the property in the slave Sarah vested absolutely in Nancy Walker, or rather whether the slave vested absolutely in her by will, and was never divested, as the contingency on which it was to be divested never happened: or whether the son of Thomas succeeded to his rights, so that the contingency happened, and the slave vested in him, on Nancy's death under twenty-one and without issue. It is entirely unimportant whether Nancy could make a will at the age of eighteen or not. That she was eighteen is admitted. But we may remark that by statute of Kentucky females can devise by will at the age of eighteen. See act of Feb. 8, 1798, 2 *Lit. and Swig. Dig. p.* 1157.

We propose therefore to consider the several questions arising under this state of the case. They are as follows:

1st. Did the slave vest in Nancy *in presenti*, by the will, subject to be divested on the contingency? and 2d, in which several subordinate questions are involved, did the contingency ever happen in which the property was to be divested?.

*First*, then, did the slave vest *in presenti?*

When words of bequest pass *a present interest*, the share of the first legatee vests in the mean time, subject to be divested on the contingency. 1 *Roper on Legacies*, 403.

In *Shepherd vs. Ingram, Ambl.* 450, Lord Ch. J. Northington was very clear that a bequest of the *residuum* of real and personal estate to the children of A, equally, with a bequest over thereof to other, in case A should die without issue, was a vested interest, defeasible; and put as an illustration of the case, that if a residue were devised to daughters, with a subsequent clause declaring that if all the daughters should die in the lifetime of the mother, then the residue should go over, that would be an absolute devise with a defeasible clause, and the daughters would be entitled to the interest and profits till that contingency happened.

So in *Skey vs. Barnes*, 3 *Merrivale*, 340, the testator devised his personal estate to trustees, upon trust to pay the interest to his daughter for her life, and after her decease to pay and divide the principal among the children of his daughter and certain others—the portions of the children to be paid at certain ages. If no issue, or issue all die before their portions became payable, then over. And it was held that the shares so given vested *immediately* in the children, liable to be divested by all dying under twenty-one, without issue. And Sir Wm. Grant, Master of the Rolls, said, " I take it to be clear that a devise over upon a contingency has no such effect as to prevent the shares from vesting in the mean time, provided the words of bequest be in other respects sufficient to pass a present interest." And again, " if a share of personal property once vests, though liable to be divested on a contingency, the question of reciprocal succession or survivorship never can arise. If the contingency happens, the share goes over; if the contingency doth not happen, the share remains vested, and passes to representatives."

The general proposition is thus laid down, " that if a legacy be given to A., and no time of payment be expressed; or if directed to be paid at twenty-one, and A. die before that age, then to B.; the legacy vests in A. at the testator's death, subject to be divested in the event of his dying under twenty-one. 1 *Roper*, 403.

Thus in *Deane vs. Test*, 9 *Ves.* 147, where there was a bequest to nephews of £2,000, to be paid out of a particular fund, and to be divided among them in equal shares; but if any of them died under twenty-one, their share to go over and be paid to the survivors; Lord ELDON held that they took vested interests at the testator's death, subject to be divested on their dying under twenty-one. The same decision was made in *Davidson vs. Dallas*, 14 *Ves.* 576.

Thus too in *Fonereau vs. Fonereau*, 1 *Ves. Sr.* 118; 3 *Atk.* 645, Lord HARDWICKE held that a legacy to A., when he shall attain 25 years of age, interest in mean time, and part of the principal to place him out, remainder to be paid him at 25 and not before, was vested and transmissible though he died before 25. See to same point *Booth vs. Booth*, 4 *Ves.* 400; *Hanson vs. Graham*, 6 *Ves.* 239; and see the doctrine fully treated by Ch. J. SAVAGE, in *Paterson vs. Ellis*, 11 *Wend.* 267.

In the present case there can be no doubt that the slave vested, by the will, in Nancy Walker at the testator's death. By the will it is given to her—she became immediately possessed of it—and it was only to be divested from her upon the happening of the contingency.

We arrive then at the second question. Did the contingency ever happen in which the property in the slave was to be divested from Nancy Walker? And under this second general question we contend—

1st. That the devise over is void, because repugnant to what precedes it. In the case of *The Attorney General vs. Hall*, 8 *Viner* 103, decided 5. Geo. 2, the testator devised real and personal estate to his son and his heirs, and says if his son should die, leaving no heirs of his body living, then so much as the son should be possessed of at his death, he devised over. Lord KING held the limitation over void, as the absolute ownership had been given to the son, and the devisees over were to have no more than the first devisee had left unspent, and therefore he had power over the whole. The words that give an estate tail in the land, give the entire property of personal estate.

In *Flanders vs. Clark*, 1 *Ves. Sr.* 9; 3 *Atk.* 509, the testatrix gave her son by will £150, and interest till paid, but he should not dispose of it to any wife, and if he died without issue, then to revert. Lord

HARDWICKE held the legatee had the whole property. And see *But-terfield vs. Butterfield*, 1 *Ves. jr.* 133; *Bradley vs. Peixotto*, 3 *Ves.* 324. So in *Ross vs. Ross*, 1 *Jac. and Walk.* 154, the testator gave his son £2000 to be paid at 25, and in case he should not receive or dispose of the same, then to return to the body of his estate, and go to the heir in tail. The son died at 25 without receiving the legacy. The Master of the Rolls, Sir THOMAS PLUMER, decided that the legacy vested absolutely in the legatee, and that the right of disposing of it, and its devolution on his representatives, followed as a matter of course.

So the general rule is laid down by Chancellor KENT, to be, that chattels or money may be limited over after a life interest, but *not after a gift of the absolute property;* nor can there be an estate tail in a chattel interest; and that it is a settled rule that the same words which under the English law would create an estate tail as to freeholds, give the absolute property as to chattels. 2 *Kent* 352.

This doctrine was very fully examined in the Court of Errors in New-York, by Chief Justice SAVAGE, in *Paterson vs. Ellis*, 11 *Wend.* 275, who concluded with saying, that it is essential to the validity of an executory devise, that it cannot be defeated by the first taker; but if the absolute property or right of disposal is given to the first taker, he may defeat the devise over, and therefore it is void. And in the same case, page 299, Senator EDMONDS decided, that "where the use of a chattel is devised to one for life, with remainder to another the devise of the remainder is valid. The devise for life in such case must be clear and explicit, and the intention of the testator to give only the use for life must be undisputed. But where the devise is such that the property in the chattel becomes vested in the first taker, any attempt of the testator to control it afterwards, or to restrict the power of disposing of it, is an interference with the absolute right of property already granted, and consequently void."

2d. We contend that the expression " the surviving one shall take the property by the will bequeathed to the deceased one," is conclusive that the contingency on which Nancy's property in the slave was to be divested, could only arise by her dying under age and without issue, leaving Thomas surviving her; and that the contingency must

have happened, if at all, in the lifetime of Thomas—so that upon his death before Nancy, her vested interest in the negro was no longer defeasible. And this is, in truth, the most important point in the cause; and involves two or three principles which we now proceed to discuss.

First, then, we assume the position that a devise over of personal property, upon an indefinite failure of issue, is void; and that the words " dying without issue," or "dying without issue lawfully begotten," all mean the same thing, and import an indefinite failure of issue, unless there are other words to qualify and restrict them.

The origin and reason of this technical construction will appear by a momentary consideration of the nature of an estate tail and an executory devise. It is not necessary to discuss here the different kinds of fees at common law. A conditional fee was restrained to particular heirs—as to " the heirs of a man's body." The courts of England, however, have always leaned against perpetuities, and they construed conveyances to a man and the heirs of his body, although intended to perpetuate the property, as carrying a conditional fee; and if the grantee died without such heirs, the land should revert according to the condition implied in the grant; but if he had such heirs, the estate, which before was conditional, became absolute by performance of the condition, at least for certain purposes, one of which was to enable the grantee to alien the land. To change this, the nobility obtained the passage of the statute *De Donis*, which enacted, in substance, that the will of the donor should be observed; that the land should revert if there never was issue, if such issue failed, or if the heirs of the body of such issue failed; that the donee should not have power to alien the land, but it should remain to his issue, or revert if issue failed. Under this statute there could be no reversion so long as the issue of the grantee had issue, and so on; but whenever that failure happened, be it in the tenth generation, or further on, then the estate reverted. Hence *failure of issue*, and *dying without issue*, came to be understood as meaning not a failure of the grantee to have issue, but a failure of the issue of such issue, at any period of time, or an indefinite failure of issue—and such was the settled con-

struction. The interest of the grantee under this statute was called a fee tail—a fee from which the general heirs were *taille*, cut off.

The most general definition of an executory devise is "a devise of a future interest in lands, or chattels, not to take effect at the testator's death, but limited to arise upon some future contingency." A more limited definition is "such a limitation of a future estate or interest in lands or chattels as the law admits in the case of a will, though contrary to the rules of limitation in conveyances at common law." All future limitations, even in wills, which are consistent with the rules of the common law respecting contingent remainders in a deed are, in a will, construed contingent remainders. 2 *Fearne* 1, 2. An executory devise cannot be barred by fine or common recovery; and, therefore, to prevent perpetuity, it became necessary to prescribe the bounds and limits beyond which it should not extend. And it has accordingly been determined that it must vest within the compass of a life, or lives in being, and 21 years and 9 months afterwards. But where an executory devise is limited on an event which may not happen within the period last mentioned, as upon a general failure of heirs or issue, it is void. It is of no importance how the fact turns out; it is void at the commencement, if the event on which its existence depends *may* exceed the preceding limits. 6 *Cruise, tit.* 32, *Devise, ch.* 17.

Chief Justice PARSONS said in *Ide vs. Ide*, 5 *Mass.* 500, and Chief Justice SAVAGE, in *Paterson vs. Ellis*, 11 *Wend.* 279, that when words have long been used in a technical sense, and have received an uniform construction, they have become a rule of property, and the construction should be adhered to, otherwise titles to an estate may be unsettled. The proper words in a grant or devise, to convey an estate tail, are, to the grantee and the heirs of his body lawfully begotten. Such a devise of land, in England, conveys an estate for life in the grantee, and the inheritance to his children. Such a devise there of chattels conveys to the grantee the absolute property. The law in both cases abhors perpetuities. A perpetuity in lands may be barred by a fine or common recovery; but not so as to personal property, and therefore it cannot be prevented but by declaring that such a devise gives the absolute property.

Moody *against* Walker.

It is perfectly well settled that a devise of land for life, or in fee simple, with a devise over if the devisee die *without issue*, or, *without leaving issue*, shall be a devise in tail to the first devisee. *Paterson vs. Ellis*, 11 *Wend.* 279; 6 *Cruise* 290; *Doe vs. Ellis*, 9 *East* 382. The words " die without issue" in this case have always been held to mean an indefinite failure of issue—and it is now perfectly well settled that the words " die without leaving issue" mean the same; and the rule of construction is the same with respect to personal as to real property. The case of *Forth vs. Chapman*, 1 *P. Wm's* 663, decided that the words " without leaving issue" meant issue living at the time of his death, and made the devise over good—and also that the words "die without issue," as to freehold, meant a failure of issue at any time; and with respect to chattels the same words meant dying without issue at their death. This was followed by *Atkinson vs. Hutchinson*, 3 *P. W'ms* 258; *Sheffield vs. Orrery*, 3 *Atk.* 282. And the same distinction as to real and personal property was mentioned loosely by Lord MANSFIELD in *Denn vs. Shenston, Cowp.* 410; but is denied by Lord KENYON in *Porter vs. Bradley*, 3 *T. R.* 143.

In *Daintry vs. Daintry*, although Ld. KENYON intimated a different opinion, the court decided that the words " die without leaving issue" were to be construed in the same manner when applied to personal, as when applied to real estate: but Lord ELDON, in *Crook vs. Derandes*, 9 *Ves.* 203 decided that the words " leaves no such heirs," mean at his death, as to personal property.

But these cases which were decided on the authority of *Forth vs. Chapman*, are now entirely overruled, and the distinction between the words " die without issue," or " without leaving issue," as applied to real or personal estate, utterly exploded, in some 300 cases: and the rule is now established, as laid down by Lord ROSSLYN in *Chandless vs. Price*, 3 *Ves.* 99; and by Lord HARDWICKE in *Beauclerk vs. Dormer*, 2 *Atk.* 308, that where the words used would give an estate tail in real estate, they give the absolute property in personalty, unless you can find in the will something to show that the testator intended to tie it up. The distinction drawn in *Forth vs. Chapman* was exploded in *Daw vs. Pitt*, or *Chatham vs. Tothill*, *Bro. Par. Cas.* 450. See *Boehm vs. Clark*, 9 *Ves.* 580; and *Barlow vs. Salter*, 17 *Ves.* 479; in

which latter case Sir WM. GRANT states the rule to be settled that these words, without something more to limit them, mean death without issue generally, in other words, an indefinite failure of issue—and that whatever words would directly or constructively constitute an estate tail in lands, will pass an absolute interest in personal estate.

To the same point are the cases of *Doe vs. Cooper*, 1 *East* 230; *Tenny vs. Agar*, 12 *East* 254; and *Romilly vs. James*, 6 *Taunt.* 204: and the doctrine is so stated by Fearne in his learned treatise. See *Fearne* 485.

The Supreme Court of Kentucky have followed the case of *Forth vs. Chapman*, and in *Moore vs. Howe*, 4 *Mon.* 202, have decided that the words " die without leaving issue" mean a failure of issue at the death of the first taker; and also that the words are to be construed in one sense when applied to real, and in another when applied to personal estate. And in *Brashears vs. Macy*, 3 *J. J. Marsh.* 90, they go so far as to declare that in a devise of personal estate, the expression " dying without issue" is invariably interpreted to mean, *ex vi termini*, issue living at the death of the first taker. See also *Mosely vs. Corbin* 3 *Marsh.* 289.

The authorities which we have already cited demonstrate the rashness of the position laid down in *Brashears vs. Macy*, and the error of each of the other Kentucky decisions.

The case of *Forth vs. Chapman*, and all the cases subsequently based upon it, have, as we have seen, been conclusively overruled, and the distinctions there laid down exploded. The reporter does not state that the word " leaving" was relied on, either by Lord MACCLESFIELD, in *Forth vs. Chapman*, or by Lord TALBOT, in *Atkinson vs. Hutchinson*, but Lord HARDWICKE, who was counsel in the case of *Forth vs. Chapman*, said, in *Beauclerk vs. Dormer*, that great stress was laid upon that word. In favor of this distinction, based upon the word "leaving," are Lord MACCLESFIELD, Lord MANSFIELD and Lord ELDON. Lord HARDWICKE both approved and condemned it, and is, therefore, as Chancellor KENT says, neutralized. Against it are Lord THURLOW, Lord LOUGHBOROUGH, Lord ALVANLEY, Lord KENYON, Sir WM. GRANT, Sir THOMAS SEWELL, Sir JOSEPH JEKYL, the Court of K. B. in

4 *M. and S.* 62, and the Supreme Court and Court of Errors of New-York. The case of *Daw vs. Pitt* in the House of Lords, and *Beauclerk vs. Dormer*, and a multitude of other cases, are against the distinction between real and personal estate, and have exploded it.

The position, so boldly assumed in *Brashears vs. Macy*, has in fact no support any where. It is no where judicially determined that there is any such distinction, where the general words " die without issue" are used, between a devise of real, and one of personal estate. I say, *no where*. In *Forth vs. Chapman*, the word " leaving" was relied on. So it was in *Atkinson vs. Hutchinson*. So in *Sheffield vs. Orrery*, 3 *Atk.* 282; *Goodtitle vs. Pegden*, 2 *T. R.* 720; *Porter vs. Bradley*, 3 *T. R.* 143; *Roe vs. Jeffry*, 7 *T. R.* 589; *Daintry vs. Daintry*, 6 *T. R.* 313; *Crook vs. Derandes*, 9 *Ves.* 203.

It is true that Lord MANSFIELD did lay down the broad distinction in *Denn vs. Shenton, Cowp.* 410; but the point was not before him; what he said was mere conversation; and no other Chancellor or Judge in England has ever gone so far. And Lord HARDWICKE says, in *Beauclerk vs. Dormer*, 2 *Atk.* 314, in direct opposition to the bold conclusion of the Supreme Court of Kentucky, that " none of the authorities come up to this point, contended for by the plaintiff's counsel, that *ex vi termini*, as this is a limitation of personal estate, it shall be confined to a dying without issue living at the time of the death of the first taker." The truth is, that the Supreme Court of Kentucky decided upon the authority of SERGEANT WILLIAMS' note to 3 *Saund.* 388 *k.*, where he states the rule as laid down in *Brashears vs. Macy*, to have been settled in certain cases to which he refers; though it is not so laid down in any one of the cases he cites, except by Lord MANSFIELD's remark in *Denn vs. Shenton*, above quoted; and SERGEANT WILLIAMS immediately adds that the modern cases agree that they are not to be so understood, and lays the rule down as in *Beauclerk vs. Dormer*.

*Target vs. Gaunt*, 1 *P. W'ms* 432, referred to as sustaining their decision, by the Supreme Court of Kentucky in *Moore vs. Howe*, was decided on the ground that the word " issue" was restricted to such issue as a person then living should appoint, and, therefore, meant issue then living.

The reference in the same case to *Lamb vs. Archer*, 1 *Salk*. 225, is incorrect, and very remarkably so. It is stated in the Kentucky case that the devise in *Salkeld* was of land to B. and the heirs of his body, and if B. should die without issue living, then to C. But the devise really was, as there stated, and "if B. die without ˍissue, *living* C., then to C." A most material distinction, and one rendering the case wholly inapplicable. The reference to 2 *Fearne* 184 is a clear mistake. No such principle is found there; and Mr. Fearne, at page 485, lays down a rule altogether different.

The reference in *Moore vs. Howe*, to 1 *Wil.* 470, whether it is intended as a reference to 1 *Wilson*, or to *Willes*, is a mistake; there is no such case in either, at that page, and the name of the case not being given, we cannot examine the reference.

Chief Justice BIBB, in his opinion on the petition for a rehearing, in *Moore vs. Howe*, said that where the devise was to the wife for life, " and at her death, leaving no lawful issue, then I will" that the property go over, a definite failure of issue was intended. " To what time," says he, "does *then* refer? It is in vain to endeavor to alter the sense by putting a hiatus between *issue* and *then*, or by putting a comma in writing, between *issue* and *then;* the will of the testator refers to one period only by the word then, and that period is, " at her death, leaving no issue, then." This is a very far-fetched conclusion, and may be best replied to in the words of Lord HARDWICKE, in *Beauclerk vs. Dormer.* The same words were used there—and his Lordship was inquiring whether there were any circumstances to confine the words to a dying without issue at the death of the first taker; and he said—" the word *then* first occurred to me, but I do not recollect any case that has turned upon this word merely, for *then*, in the grammatical sense, is an adverb of time; but in limitations of *estates*, and framing contingencies, it is a word of reference, and *relates* to the determination of the first limitation in the estate where the contingency arises. And if the court here was to lay any stress upon the word *then*, it would be going a great deal too far; for it is too ambiguous to be taken as an adverb of time."

The Kentucky decisions are not more opposed to the decisions in England, than to those in other States, and in courts where the author-

Moody *against* Walker.

ities received a more ample investigation, and the subject a more profound consideration.

Chancellor KENT says, in his *Comment., Vol.* 4, 276 *n.* after reviewing the different authorities on the question as to the distinction between the words in a devise of real estate, and the same words in a devise of personal estate, that " the American cases, without adopting absolutely the distinction in *Forth vs. Chapman*, are disposed to lay hold of slighter circumstances, in bequests of chattels, than in devises of real estate, to sustain the limitation over, and this is the extent to which they have gone with the distinction." But the rule will be found to go still farther in the modern cases, and to be laid down by the same author in 2 *Com. p.* 286; *2d Ed. p.* 353, that the general words which create an estate tail in land, give the absolute property in chattels."

In *Williamson vs. Daniel*, 12 *Wheat.* 568, the testator gave certain negroes to his grand-son, and certain other negroes to his grand-daughter; and then declared " that if either of my grand-children should die without a lawful heir of their bodies, that the other should heir its estate." The court said that these words converted an absolute estate, previously given, into an estate tail; and if so, since slaves are personal property, the limitation over is too remote. And, further, that " there are no other words in the will, which restrain the dying without issue, to the time of the death of the legatee. The remainder over is to take effect, whenever either of the immediate legatees should die without a lawful heir of his or her body. The gift in remainder is a gift to the stock, and is limited on a contingency too remote to be allowed by the policy of the law.

And now before we leave the Kentucky decisions altogether, it may be well to remark that slaves in Kentucky, by the act of 1798, *Lit. and Swig. Dig. p.* 1156, *Sec.* 28, were declared real estate. By sec. 33, it was provided that a bequest of a slave should vest the absolute property of such slave; and no remainder of any slave should be limited by any last will and testament in writing " otherwise than the remainder of a chattel personal, by the rules of common law, can or may be limited." In this case there is no remainder. There is an executory devise, if any thing, which is entirely different; and if here

is no remainder, the bequest of the slave to Nancy gave her the absolute property.   But if it is considered a remainder within the meaning of the law, then the statute drives us to the common law, to ascertain whether the limitation be good or not.   Anciently there could be no limitation over of a chattel—but it is now settled that a gift for life of a chattel is a gift of the use only, and the remainder over is good as an executory devise.   We are to look to the common law, therefore, for the effect of this devise under the Kentucky statute.   The English and American authorities are learnedly reviewed and commented on by C. J. Savage in _Paterson vs. Ellis,_ where the devise over was on a dying under twenty-one, and without lawful issue; and the distinction taken in _Forth vs. Chapman,_ decided by him not to exist— and the weight of English authority is decidedly against it; and the Court of Errors decided the rule to be, as laid down by Savage and Senator Edmonds, " that the same words which create an estate tail as to freeholds, give the absolute property of personal chattels;" thus overruling the decision of the Chancellor in the same case, and also in _Rathbone vs. Dyckman,_ 3 _Paige_ 30.

We conclude, therefore, that the devise over in this case would be void, if it were simply in these words, " and if either die before arriving at 21 years of age, or without issue lawfully begotten, the slave devised to one shall go to the other."   The authorities prove that this would be a devise over upon an indefinite failure of issue; and

2nd.   We contend that the words "surviving one" are the only words which made this devise over good in its inception; and, therefore, as they make the devise over good by showing the intention of the testator to confine the contingency to a life in being, to wit, to the lifetime of Thomas Walker, the contingency must have happened, if at all, in his lifetime; and if it did not happen in his lifetime, the property became indefeasible in Nancy Walker upon his death.

Anciently, not even the word " survivors" would change the construction, or make the failure of issue definite, at least in the case of real estate.   The word " survivors" was construed to mean " others," and was held not to operate to restrict the failure of issue to the death of the first taker.   In _Pells vs. Brown, Cro. Jac._ 590, the devise was of real estate, to Thomas, his son, and his heirs forever, and if Thomas

died without issue, *living* William, then to William, his heirs and assigns forever. This was held a contingent fee to William by way of executory devise—for " Thomas might survive William, or have issue alive at the time of his death, living William; in which case William should never take."

In *Chadrch vs. Cowley*, the devise of certain lands to Thomas and his heirs, and certain other lands to Francis and his heirs, with this additional clause—" ITEM, I will that the survivor of them shall be heir to the other, if either of them die without issue." This was holden an estate tail, and the devise over void. And the court said " if the devise had been, 'if he die without issue in the life of the other,' " or " if he die before such an age," then it would remain to the other.

So in *Hope vs. Jeffery*, where the devise over was "if either of them die without issue lawfully begotten, the said legacy shall be equally divided between them that are left alive;" it was held that the legatee or first taker took an estate tail. So in *Toovey vs. Basset*, 10 *East* 466, there was a limitation over to survivors, but it was still held to mean an indefinite failure of issue. And in *Barlow vs. Salter*, 17 *Ves.* 479, the word survivors was held to mean the same thing as " others."

So in *Wotten vs. Andrews*, 2 *Bingh.* 125, the words of limitation were, "in case any or either of the said children should happen to die, without leaving any lawful issue, that then the rents, issues and profits belonging to such son or daughter so dying, shall go to and be received by the survivors or survivor." The court said that there was a gift over after failure of issue, and that gives the first taker an estate tail. And the law is now settled that the same words which will create an estate tail in lands, pass an absolute property in personal estate.

But the doctrine has never been carried thus far with respect to a devise of personal property. For, as STORY, Judge, says in *Lillibridge vs. Adie*, 1 *Mason* 236, "in respect to terms of years, and other personal estate, courts have been very much inclined to lay hold of any words to tie up the generality of the expression " dying without issue," and restrict it, &c. And the cases which deny the restricting effect of

the word " survivors" have been in later days overruled, even as to real estate."

In *Hughes vs. Sayer*, 1 P. W'ms, 534, there was a devise of personal estate in shares to several persons, " and upon either of their dying without children, then to the survivor." The Master of the Rolls decided that the word " children" was synonymous with " issue," and a devise over of personal estate on a dying without issue would be void; but that the words must be taken to mean " children living at the death of the party." For that it could not be taken in the other sense;] that is, whenever there should be a failure of issue, because the immediate limitation over was to the surviving devisee.

So in *Massey vs. Hudson*, 1 *Merivale* 130, the devise was of two several legacies of property of A. and B.; and in case A. or B. die without lawful issue, then the whole to go to the survivor, his executors, administrators or asssigns. The Master of the Rolls held the bequest over to be too remote. He said that a bequest to A. after the death of B. does not import that A. himself must live to receive it; and so a bequest to A. in case B. die without issue. That in the first case B.'s interest vests at the death of the testator, and is transmissible to his representatives, who will take whenever B. dies; and in the second case A.'s representatives will take whenever the issue fails. For that reason the bequest over is held too remote. But if A. is personally to take the legacy, then the presumption is strong that an indefinite failure of issue could not be in the testator's contemplation. *Prima facie*, he said, a bequest over to the survivor of two persons, after the death of one without issue, furnishes this presumption; for it will be contended that the survivor was meant individually and personally to enjoy the legacy, and not merely to take a vested interest, which might or might not be accompanied by actual possession. And he decided that the addition of the words " executors, &c." excluded the presumption that it was a mere personal benefit that was intended for the survivor. For though there should be no such failure of issue as would enable him personally to take, yet his representative would be enabled to claim in his right whensoever the failure of issue should happen. See also, *Lampley vs. Blower*, 3 *Atk.* 396.

This question, whether a limitation to the survivor or survivors of

two or more persons, on the other or others dying without issue, is definite or indefinite, has been much discussed, and conclusively settled in New York. It first came before the Supreme Court in *Fosdick vs. Cornell*, 1 *J. R.* 440, upon a will which provided that if any of the devisees " shall happen to die without heirs male of their own bodies, that then the lands shall return to the survivors, to be equally divided between them." The court decided that the limitation over was valid, as being on a definite failure of issue; and their reasoning is based on *Hughes vs. Sayer*, that the immediate limitation over was to the surviving devisee. That decision was acquiesced in, and no writ of error brought.

In *Jackson vs. Blanshan*, 3 *J. R.* 292, the devise was of all the estate, real and personal, to six children, to be equally divided between them, share and share alike; but if any of them died before arriving at full age, or without lawful issue, that then his, her, or their part or share should devolve upon, and be equally divided among the surviving children, and to their heirs and assigns forever. That was precisely this case—the wit of man could not devise one more precisely like it in all its features, and the court held the devise over to be good; and further held that the shares of one of the sons who died without issue, after the death of four of the other children who left issue, went, not to the heirs of the deceased children, but solely to the surviving child.

The same case was again presented to the court in 6 *J. R.* 54, and the court then decided that the words " if any one or more of my above named children should die before they arrive at full age, or without lawful issue, that then his part of the estate shall devolve upon the surviving children," were to be construed conjunctively, the word *or* being taken as a copulative, for *and*, so that the devise over did not take effect. The same rule of construction was adopted in *Fairfield vs. Morgan*, 2 *Bos. & Pul. N. R.* 38; *Dean vs. Remeys*, 9 *East*, 366; *Eastman vs. Baker*, 1 *Taunt.* 74; *Day's lessee vs. Day*, 16 *East*, 97; but either decision is conclusive in our favor.

In *Moffat vs. Strong*, 10 *J. R.* 12, there was a will by which personal property was devised to heirs, and it was provided that " if any of my sons should die without lawful issue, then let his or their part or

*Moody against* Walker.

parts be divided equally among the survivors." Chancellor KENT decided that "if the limitation vested wholly on the words " die-without lawful issue," it would fail; but that the term survivors will be found to rescue the limitation from the operation of the general principle, and to bring it within the reach of the cases which have adjudged that expression to be the cause of a different construction;" and for the reason that it could not have been intended that the survivor was only to take after an indefinite failure of issue, as that event might not happen until long after the death of all the survivors. He based this decision on *Hughes vs. Sayer*, and on *Nicholls vs. Skinner, Prec. in ch.* 528; and reiterated the principle that it was to be considered a dying without issue in such a manner as that the survivors or survivor might take, which must be during their lives, and consequently good.

In *Jackson vs. Staats*, 11 *J. R.*, 337, the same question was raised, and SPENCER, J. said, "none of us have ever doubted the correctness of the decision in *Fosdick vs. Cornell*, and it would be waste of time to review the authorities there cited." And the court further decided where the testator, in making the limitation over, said, "if any one or more happens to die without heirs, his or their part or shares shall be equally divided among the rest of the children;" he undoubtedly, by " the rest of the children," refers to his own children, whom he had before named in his will—and therefore, the last surviving child, whether he had issue or not, would retain not only his share in the first devise, but also the shares which accrued to him; and the grand children of the testator would take nothing.

In *Anderson vs. Jackson*, 16 *J. R.* 382, the whole doctrine came under review in the Court of Errors, and notwithstanding that Chancellor KENT, in an able opinion of 30 pages, impugned the decisions previously made by himself and the Supreme Court, and above referred to, yet these decisions were sustained by the Court of Errors; and it is capable of demonstration that Chancellor KENT was mistaken; for *Van Buren arg.* in *Wilkes vs. Lion*, 2 *Cow.* 362, shows conclusively that out of 26 cases relied on by the Chancellor in *Anderson vs. Jackson*, only one is opposed to the doctrine that the word survivors takes the case out of the operation of the general principle.

And in the case of *Wilkes vs. Lion*, the Court of Errors affirmed,

the decision of the same court in *Anderson vs. Jackson* to be the law; and decides that the word survivor necessarily limited the failure of issue to a life in being; and that if it had been on a mere failure of issue, without the word survivors, the limitation would have been void. 2 *Cow.* 396. And this upon the ground that where the word survivor was used, .he intention of the testator was manifest and apparent that the surviving son was to be personally benefited; thus affirming the decison of the Supreme Court, in the same case, *Lion vs. Burtiss,* 20 *J. R.* 483.

The same principle will be found decided in *Richardson vs. Noyes,* 2 *Mass.* 56, and so in *Keating vs. Reynolds,* 1 *Bay.* 80, the court say " the term survivor is a term of much import here. It carries with it the idea of the longest liver, provided the other sister should leave no children behind her, that is, none living at the time of her death."

In either aspect, the cases cited are fatal to the claim and pretensions of the complainant. For, if the words " surviving one" do not rescue the limitation over in this case from the operation of the rule, then, as it is void, Nancy Walker took the absolute property on the testator's death. If they do take it out of the rule, then it is upon the sole ground that the contingency was to happen in the lifetime of Thomas Walker; and it must be admitted that there are strong authorities conflicting with the New York decisions. Such is the case of *Wollen vs. Andrews,* 2 *Bingh.* 126, heretofore qnoted, the cases cited from the earlier reporters, and the opinion of Kent, who is himself a tower of strength, in *Anderson vs. Jackson.* And so too are the Pennsylvania decisions.

Thus in *Haines vs. Witmer,* 2 *Yeates,* 400, there were devises of real estate to children, and it was then provided, that if either of the children should die, without issue lawfully begotten, that each and every of their respective shares should be equally divided to and amongst the survivors. The court recognized the distinction laid down in the older cases, and, as we have shown, now exploded, between the effect of the words " die without issue," or " without leaving issue," in devises of real estate, and of the same words in devises of personal estate. And SHIPPEN J. and YEATES, J. denied the effect of of the word " survivors," in devises of real estate; and said that the

distinction founded upon it was too refined, and that the use of that word did not take the case out of the operation of the general rule, or make the limitation over to depend on a definite failure of issue: and they relied upon *Chadock vs. Cowley, Cro. Jac.* 695; *Wilson vs. Dyson, T. Raym.* 426; and *Hawkins' case,* 2 *Leon.* 129.

*Chadock vs. Cowley* we have already examined. In *Wilson vs. Dyson,* the devise was to the son Gerard, and if he died without issue, then his estate to be divided among the other sons and daughters, and the survivors of them. And after several arguments at the bar, it was adjudged that Gerard, the son and first taker, took an estate tail.

In *Hawkins' case* there was a devise of three messuages to wife for life, remainder of one of said messuages to testator's son Robert and his heirs, remainder of another to his daughter Christian and her heirs, remainder of the third messuage to daughter Joan and her heirs; and " if any of said issues die without issue of his body, that then the other surviving shall have all that part, &c., between them equally to be divided." The devisor dieth, the wife of the devisor dieth, Joan dieth having issue, Robert dieth without issue, Christian entereth into all the house of Robert and dieth, and her husband holds on as tenant by the courtesy. COKE argued that the surviving child should have the whole, and the issue of Joan nothing. GOLDING, *contra*, argued that where only one survived no further estate vested; for there ought to be two to take by the survivor, for the words are " equally to be divided betwixt them;" and then, as it cannot accrue by survivor, it descends. SHUTE, Justice, said that if both daughters had survived, they should have fee in the house of Robert, but not by the will, but by descent in *coparceneny:* and that when two are dead, the son and one daughter, then it cannot be divided, therefore the will as to that is void, and then the common law takes place, and puts the house to the issue of one daughter and the other daughter surviving. The conclusion is supposed to follow, that Robert took an estate tail. But GAWDY, Justice, said that though the estate limited by the will has become void by matter of later time, yet *ab initio* it was not so—for that if one of the daughters had died without issue before the death of Robert, there would have been no coparceneny, for Robert would have had all the fee, one moiety executed, and the other moiety ex-

pectant, which latter moiety the sister would have had for life, and then the devise would not have been void. And as there were two survivors, there was nothing to be divided, and so the house of Robert descended, as at common law, to the daughters of Christian and Joan.

The distinctions here drawn are somewhat obscure, seemed to be founded on the principle that the limitation over was not of the estate or fee in the house, but merely of the house itself—so that if Robert died the law threw the fee on the two daughters, by descent from him, as co-parceners, and thereby the life-interest in the house to each of them was merged in the fee, and the devise became void. But when a daughter died, the law threw the whole fee on Robert, by descent, and then the life interest in the house, of the other daughter, not being merged, the devise over as to her was not void, and one moiety of Robert's fee was expectant on her death, and the other moiety executed. If this be the grounds of the decision, it does not sustain the case of *Haines vs. Witmer.*

The same decision has been made in Virginia, in regard to real estate. In *Bells vs. Gillespie,* 5 *Rand.* 273, there was a devise to the sons, and if either should die without lawful issue, his part to be divided among the survivors; and the effect of the word survivors, as taking the case out of the general rule, was denied.

From all the authorities, then, we conclude that it is established that the term " surviving one," in the will now under consideration, makes the contingency to depend upon a definite failure of issue—upon a failure of issue at the death of the first taker—that the devise over was intended as a personal benefit, and that the failure of issue or death under 21 of Nancy, must have happened in his lifetime, to have divested her estate in the slave devised to her.

That every court, in favor of vested interests, requires the events which were to divest them to happen with certainty and strictness, is another rule which applies with equal point and force to the present case. Thus, the very contingency pointed out by the will in this case, must happen, not only because otherwise the interest of Thomas passing to and vesting in his representatives, the contingency would be too remote and the limitation void, but also, because in the words of Lord ALVANLEY, in *Harrison vs. Foreman* 5 *Ves.* 209, " it is perfectly

22

clear, that where there are clear words of gift creating a vested interest, the court will never permit the absolute gift to be defeated, unless it be perfectly clear that the very case has happened, in which it is declared that the interest shall not arise. It must be determined, on the words of the will, that there was a vested interest which was to be divested only upon a given contingency. And the single question is, whether the contingency has happened." See 1 *Roper* 414.

One modification of this rule is, that if legacies be given to A. and B., and if either of them die during the life of D., then to the survivor living at D.'s death—and both die before D.; as the bequests vested in A. and B. at the testator's decease, subject to a contingency which never happened, the interests which vested conditionally in the legatees, became absolute in both of them upon the death of the survivor before D.

In *Harrison vs. Foreman*, referred to above, an annuity was, by will, directed to be transferred after the death of Mrs. Barnes, to Peter and Susannah Stallard, equally; " and in case of the death of either of them before Mrs. Barnes, the whole to go to the survivor living at her decease." Both the legatees died during the lifetime of Mrs. Barnes; and it was determined that the annuities went to the legal personal representatives of Peter and Susannah, upon the principle, that they had taken vested interests in the fund at the death of the testator, subject to be divested in favor of the survivor who might be living at the decease of the tenant for life; and as there was no such survivor at that period, the divesting contingency never happened, and consequently the interests at first vested, remained undisturbed. To the same point are the cases of *Smither vs. Willock*, 9 *Ves.* 233; *Wall vs. Tomlinson*, 16 *Ves.* 413; *Brown vs. Ld. Kenyon*, 2 *Mad.* 410; *Sturgess vs. Pearson*, 4 *Mad.* 411; *Skey vs. Barnes*, 3 *Meriv.* 335, 340.

*Anon.* 2 *Freem.* 301, is a case directly in point. It is thus stated: " A hath three daughters, and deviseth to them three hundred pounds a piece, to be paid at the age of twenty-one years, or day of marriage, which should first happen; and if either should die before the said times, then her portion to be equally divided between the survivors. The eldest marries and hath her portion, and dies leaving issue;

the youngest dies before she either is married or attains the said age of twenty-one; the second survives."

"The question was, whether the second surviving should have all the portion of the youngest, or whether the children of the eldest should have a share.

"Resolved by ELLIS, WINDHAM, and HARDWICKE, Ld. Chanc. that the second sister should have the whole; and though it was objected that the words "equally to be divided," did imply that they should be sharers, yet that is to be understood, *reddendo singula singulis*, in case two of them had survived."

In *Milson vs. Awdry*, 5 *Ves.* 465, where the will provided that "if any of said nephews and nieces should die without leaving any child or children, then the share or shares of him, her or them so dying, should go to and among the survivors or survivor of them;" the Master of the Rolls was long in doubt. There were four nephews and nieces. Jacob died first, without issue; John died next, leaving issue living; Hannah died without issue; and Samuel was living unmarried. The Master of the Rolls said the testator undoubtedly meant that if there were any children, they would have the whole fund after the death of the tenants for life, and that he had endeavored to give the will that effect; but that he could not go so far as to give the word "survivors or survivor" so large a construction—that he could not construe them to be the same as "others or other." The survivors, he said, "are now reduced to one. If he dies without leaving a child, there must be an intestacy upon this construction; and yet there is issue of a deceased brother living." He was thus compelled by law to decide that where the share of a brother was to go to a surviving brother upon a contingency, if that brother died before the contingency happened, his issue would not take, but there would be intestacy. This case is directly in point.

In *Davidson vs. Dallas*, 17 *Ves.* 576, Davidson, by his will, bequeathed to the children of his brother £3000, to be equally divided between them; and if either of them die before the age of twenty-one years, their share to go to the survivors. The point in the case was whether children born after making the will should be excluded from division. ELDON, Lord Chanc. said; "this legacy is a vested interest

subject to be divested by the death of any of the children, under the age of twenty-one, leaving another child surviving." And he further decided that it was an immediate legacy to the children living at the testator's death, and vested in them at that time, equally to be divided among them, with a limitation over, if either of them should die before the age of twenty-one, then to the survivors; and that there was nothing in the will to cause the word "survivors" to be construed "others."

In *Kirkpatrick vs. Kirkpatrick*, 13 *Ves*. 476, where certain personal property was bequeathed to two sons, " but in the event of the death of either of them before he attains the age of twenty-one years," his share to go to the survivor; and in the event of both dying without issue, their shares to go over, Lord ELDON held the latter limitation over good, because the failure of issue was confined to the death of the survivor. There was no question as to the validity of the first devise, because the limitation over was to the survivor personally, and, therefore, could not be intended to be on an indefinite failure of issue.

In *Hulbert vs. Emerson*, 16 *Mass*. 241, a devise was to A. and his heirs and assigns; but in case A. should leave no male issue, then one moiety to be equally among A's. children, and the other among the surviving children of the testator. At the time of the testator's death he had seven children, besides A. A died without male issue, and at A's. death only one of the testator's children was living; but the children of the other five of his children were living. And the court determined that the devise over of the moiety to the surviving children of the testator, meant such as should be surviving at A's. death without male issue; and that if no children of the testator had survived, the contingent remainder as to the moiety would have failed; but that it had not failed, and the moiety went to the single surviving child.

In *Jackson vs. Blanshan*, 3 *J. R.* 292, there was a devise of real and personal estate to six children, and their heirs and assigns forever, to be equally divided among them, share and share alike; "but if any one or more of my above named children should die before they arrive at full age, or without lawful issue, that then his, her or their part or share of my estate shall devolve upon, and be equally divided

among the rest of my surviving children, and to their heirs and assigns forever." All the children died except B. and all left issue except M., who arrived at full age. The Supreme Court decided, first, that the share of M. went over on his death without issue, although he arrived at full age—but so far the decision was incorrect; and was overruled in *Jackson vs. Blanshan*, 6 *J. R.* 54, where the words " arrive at full age, or without lawful issue" were construed conjunctively, the "or" being taken as a copulative for " and," so that the share of M. vested on his arriving at full age, though without issue. But the court further decided, in 2 *J. R.* 297, (and this part of the decision never was overruled,) that the grand children could not be considered as " surviving children" within the intention of the testator; and that B. took the whole share of Matthew; and the issue of the children who died before M. took nothing.

In *Moffat vs. Strong*, 10 *J. R.* 12, where the devise was to the sons of the testator, and if any of them die without lawful issue, then his or their part to be divided equally among the survivors; and the court held that as the limitation was to the survivors, it could not be intended a dying without issue generally, which would make it void; but a dying without issue in such a manner as that the survivors or survivor might take it, which must be during their lives, and consequently good. See also *Jackson vs. Staats*, 11 *J. R.* 337, referred to above.

And in *Lion vs. Burtiss*, 20 *J. R.* 488, where the devise was of separate property to each of two sons, and " if either should depart this life, without lawful issue, his share or part shall go to the survivor," Ch. J. SPENCER said " the surviving son was to inherit the part devised to the son who should first die without lawful issue; thus clearly denoting an intention that the surviving son should personally be benefitted, by enjoying the estate which his brother had left, without issue to inherit it."

In the same case, named *Wilkes vs. Lion*, in the Court of Errors, 2 *Cow.* 333; *Van Buren, Arg.* 358, said " it goes to the survivor of the two sons, and it can go to him only in the event of his surviving." And in the case of *Reating vs. Reynolds*, quoted by him, this position is amply sustained. " This term survivor," say the court there, " is a

term of much import here. It carries with it the idea of the longest liver, provided the other sister should leave no children behind her. The decision in *Lion vs. Burriss* was almost unanimously affirmed.

In *Jackson vs. Thompson*, 6 *Cow.* 178, there was a devise of real estate to four children in fee, in four separate parcels, and it was provided that if any of them should die without issue of their body or bodies, lawfully begotten, the share of the deceased should be equally divided between the survivors. Two died with, and one *without* issue, leaving one surviving; and it was held, that the surviving one took the whole of the deceased child's share, in exclusion of the grand children, as the sole survivor of the four children of the testator; and that the children of the two deceased *children were not survivors,* within the intention of the will. These cases are again affirmed in *Paterson vs. Ellis,* 11 *Wend.* 259.

In *Pelletreau vs. Jackson,* 11 *Wend.* 121, which was upon the same will, where if either of the sons, Medcef or Joseph should die without lawful issue, his share was to go to the survivor; and in the same case in the Court of Errors, as *Jackson vs. Waldron,* 13 *Wend.* 178, it was settled that the right of one son in the share devised to the other, during the lifetime of the other, was a mere naked possibility, and not assignable or releasable; and that the interest only becomes certain in the event of survivorship. It goes to the survivor—he may or may not be that person. And in the Court of Errors it is said by TRACY, Senator, that " the direction of the estate was not necessarily to Medcef or his heirs, except on the contingency that Medcef survived his brother;" and that " as no estate could come to Medcef or his heirs, unless he survived Joseph, consequently, neither he nor his heirs were ascertained to be persons who could take the estate, even if Joseph died without issue."

These decisions of the courts of New-York have been affirmed by the Supreme Court of the United States, in *Jackson vs. Chew,* 12 *Wheat.* 153; and the principles settled by them may be considered as the established law of this country; and they were again referred to and confirmed in *Waring vs. Jackson,* 1 *Peters* 570.

In *Wotten vs. Andrews,* 2 *Bingh.* 126, it is expressly laid down, that " survivor or survivors" mean not the surviving stocks, but the surviving

children. In that case, after a separate devise of rents to each of six children, the testator provided that " in case any or either of his said children should happen to die without leaving any lawful issue, then that the rents, issues and profits belonging to such of his sons or daughters so dying, should go to and be received by the survivor or survivors." A., C., E., and F., four of his children, died without issue, B. left a son and two daughters, and D. survived. The Court of Common Pleas decided, first, that the clause just quoted made the devise an estate tail on each child, so that B.'s son took the whole of B.'s one-sixth part, to the exclusion of the daughters—and second, that the survivor, D., was entitled to, and took, as survivor, the whole of the shares of A., C., E., and F., upon their decease, to the exclusion of B.'s children; and said that the words "survivor or survivors" mean the surviving children, not the surviving stocks.

In *Crowder vs. Stone*, 3 *Russell*, 217, the devise was of certain sum of money to be paid to a nephew and four nieces, share and share alike, to be equally divided between them on the death of the testator's brother and wife; and that, in case of the death of the nephew, or any or either of the nieces, without lawful issue, before their respective shares should become payable, then the share of the one so dying without issue " should go to and be equally divided between and amongst the survivor and survivors of them, share and share alike." The wife survived the brother, and died in 1823, at which time, out of the nephew and four nieces, one only (Ruth) was alive. Mary died 1797, leaving an infant son who died in 1799. Catharine died in August 1797, and John in 1805, both leaving issue who were still alive. Jane died in 1802, without issue.

One question raised in this case was, " whether the personal representative of Catharine, who died before the failure of issue of Mary, and before the death of Jane, was entitled to a share of the shares originally given to Mary and Jane, or whether the shares which were limited over, went only to such of the five individual legatees as were surviving at the time when the accruer happened." LYNDHURST, Ld. Chanc. said " it was contended that the words ' survivor and survivors of them' were to be construed ' other and others.'" That is a construction which the court has, in some cases, put upon those or sim-

ilar words; but it is what Lord Eldon, in *Davidson vs. Dallas,* calls "a forced construction of the term survivor;" and he contrasts it with what he calls its natural meaning. It is a construction which the court may sometimes be compelled to adopt, in order to accomplish the intention which appears in the whole of the will; and in *Wilmot vs. Wilmot,* it was scarcely possible to put any other meaning on the words. But in looking at the language and provisions of this will I do not find any such necessity; and it seems to me that the words, "survivor and sur- vors" are here to be taken in their natural meaning. The shares which became subject to the operation of the bequest to the survivor and survivors, will be divisible among such only of the five legatees as were living at the time when the events happened on which the shares were to go over respectively. The representative of Catherine is not enti- tled to any part of them."

We have arrived, then, at the following conclusions:

*First:* By the devise of the slave Sarah to Nancy Walker, the property of the said slave vested in her, *in presenti,* upon the death of the testator.

*Second:* That it is very doubtful whether the devise over was not void *ab initio,* because repugnant to what precedes it; and whether the law is not, that a chattel may be limited over after a life interest, or after a devise of the use of the chattel for life; but not after an ab- solute gift and bequest thereof.

*Third:* That a devise over of a chattel upon an indefinite failure of issue, is void.

*Fourth:* That where the words used would give an estate tail in real estate, they give the absolute property in personalty.

*Fifth:* That it is somewhat doubtful whether the words "surviving one" take this case out of the general rule—and if they do not, then the limitation over is void *ab initio.*

*Sixth:* That the addition of the words " before they arrive at lawful age" has no such effect as to take the case out of the general rule; and, therefore, if the limitation over is good, it must be on the introduction of the term "survivingone."

*Seventh:* That the use of this term only takes this case out of the

general rule, upon the ground that the contingency was to happen, if at all, in the lifetime of Thomas.

*Eighth:* That the contingency not having happened on which Nancy's property in the slave was to be divested, she had the absolute property in the slave after Thomas' death, and the right, at the age of eighteen, to dispose of the slave by will.

If these conclusions be correct, the court here will proceed to reverse the decree of the court below, and render such decree in the premises as should have been rendered by that court.

In reply to the argument that the complainant is entitled to recover as heir of Nancy Walker, we remark that the act of 1798, declaring slaves to be real estate, makes them descend as real estate descends by act of 1785, by which the estate of an intestate, leaving no father, went to the mother, and not to the brothers and sisters, or their descendants; and not to act of 1790 or 1796—and the law is settled in Kentucky that slaves devised to infants by their father, vest, on their death, in their mother, to the exclusion of brothers and sisters. And this has been decided in *Pinckard vs. Smith, Lit. Sel. Cas.* 331; *Scroggin vs. Allen,* 2 *J. J. Marsh.* 467, against the decision in *Lytle vs. Rowton,* 1 *Marsh.* 519. See 1 *Morehead and Brown's Dig.,* pages 560 *to* 566.

If the case is rested on this point, Moody, as heir of Nancy's mother, his wife, is clearly the absolute owner of the slaves.

FOWLER, TRAPNALL & COCKE, *Contra:*

It is contended by the appellee, that said court properly overruled said Moody's motion to dismiss for want of bond for costs, as no proof was produced or offered to be produced of the allegation of non residence, and in fact said Cook was a resident of Arkansas at the time the suit was commenced, and by law responsible for the costs of the suit. The other branch of the motion was also properly overruled, because there is no showing in the bill, or by evidence offered by said Moody, that Walker was over fourteen years of age; and where a minor is under fourteen years of age, it is not necessary for him to appear in court, but the court will, of course, allow such next friend "to continue as next friend." *Vide Pope, Steele, and McCampb. Dig.*

23

428, *sec.* 1., *title, minors, &c.* Such appearance *then*, in open court, by Walker, even were he over fourteen years of age, was unnecessary, because at the time the suit was instituted, said Walker and Cook, as minor and next friend, had appeared before the Judge of said Circuit Court, in proper person, and as such made the necessary affidavit for the writ of *ne exeat*, and instituted the suit. This was a sufficient acknowledgment, by said Walker, of Cook's authority as his next friend, within the meaning and spirit of the statute; and was a virtual appointment, by the said Judge, of said Cook as next friend, at the personal instance and request of Walker; and there could be no necessity or propriety in requiring Walker to appear the second time before the Judge for the same purpose. By the statute above referred to, the Judge, at chambers, had the power to appoint and admit Cook as his next friend. And in Chancery, a much wider range of discretion pertains to the Judge, at his chambers or in vacation, than in proceedings at law. It is further contended by the appellee, that the permission, by the court, for Cook to continue as next friend, was a matter as to the appellant, solely and exclusively within the sound discretion of the court or Judge, and one which could not at all prejudice the rights of the appellant—one with which he had nothing to do. It was a matter to be disputed by the minor only; and for misconduct by the next friend, he could be held responsible to the minor for his abuse of the trust. The next friend stands in the same relation to the minor, as an attorney to his client. And if appellant could, under any circumstances, be permitted to question his authority, facts and circumstances would have to be set out and sworn to, before a court would stop to enquire into it, or entertain a motion for that purpose.

The motion made by Walker to be permitted to prosecute in his own name, could not affect the case, because even in that he recognized Cook as his next friend, and as having brought the suit by his authority: if the court erred in overruling that motion, it was to Walker's prejudice, and Moody can take no advantage of an error which is not to the prejudice of his own rights.

The third error assigned by the appellant, is, that the court below refused to render a decree in favor of Moody on his motion, and to

take his answer for confessed, because the complainant had filed no replication within the time prescribed by law. This motion was one of extraordinary character; and it is believed that no precedent for it can be found in any work on Chancery or Chancery Practice. The court was compelled to overrule it—there was no alternative. Replication is but matter of form; and want of one, which by our statutes can only be general and in the same words in every case, cannot be made the grounds for a decree in favor of a defendant, or for the reversal of one rendered against him. See 1 *Bibb's Rep.* 279; *Scott vs. Clarkson's Ex'or,* 379; *Reading vs. Ford's heirs and Ex'ors, Hind's Practice,* 289. It may be filed *nunc pro tunc,* or not filed at all. See above authorities. In the case of *Keatts vs. Rector,* decided at a former term of this court, no replication was ever filed to the answer of Keatts. And this court, in its decision upon that case, did not even take the answer of Keatts as true in all its parts, although it considered the answer as properly there, and passed upon its merits, but received depositions taken by Rector to sustain his bill and overturn said answer, where no replication whatever had been filed. The old rule on this subject, until extended and liberally enlarged, in the last recited case, was, in default of a replication, to take the answer as true in all its parts, as far as directly responsive to, or denying the allegations of the bill. But no decree was ever rendered on account of such default; the case was simply heard upon bill and answer, and upon depositions or exhibits sustaining the allegations of the bill not admitted or denied by the answer. The only effect of failing to reply, was that plaintiff was not permitted to disprove the denials of the answer—his default being considered an admission of such denials. *Vide* 1 *Bibb. Rep.,* 279, &c.

The fourth error assigned, is, that the court below refused to exclude the certificate of marriage of Thomas Walker, the complainant's father. This certificate was properly admitted in evidence—being properly authenticated and in due form of law. And if not so, the decree could not be affected thereby, because the marriage is abundantly and fully proved *aliunde,* by the depositions.

But the appellant contends that the depositions were improperly admitted on account of their not being legally or sufficiently authen-

ticated; and that the court below erred in not striking out such parts as he, the appellant, conceived to be irrelevant, as derived from hearsay, &c. Appellant's motion to exclude and strike out, &c., was properly overruled. The authentication of the depositions is sufficient. A deposition taken in another State is not included in any of the acts of Congress on the subject of authentication. A deposition taken before a Justice of the Peace of the State of Kentucky is not an act of a Legislature, or a record or judicial proceeding of a court of that State; nor is it a record and exemplification of office books, kept in a public office of that State, "not appertaining to a court." Therefore those acts of Congress are utterly inapplicable; and we are thrown back on other ground to ascertain what is a sufficient *authentication* of depositions taken in a sister State. The dedimus, or commission, is by law, and in fact, directed to any Judge or Justice of the Peace of the State of Kentucky. Thus empowered by our statute, and by an authority from the court in which the cause is here pending, is not the signature of a Justice of the Peace, as such, of itself sufficient? And is not our court bound to receive it, under such general authority given? Congress has not legislated upon this subject, although the power is delegated to it by the constitution. "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State," &c. *Const. U. S., Art.* 6, *Sec.* 1. Is the certifying and taking a deposition a public act? If so, a Justice of the Peace is a public officer, and our courts are bound to respect his public acts. At any rate, the certificate and official seal of the Clerk of a Court of Record, and of the Judge of that Court, of the magistracy, &c. of the Justice taking the deposition, are public acts; and the courts of our State, under our own laws, the Federal Constitution, and the principles of comity and international intercourse between States, are bound to respect them. They were properly authenticated and well admitted. It is clearly shown that the person who took the depositions was a "Justice of the Peace of the State of Kentucky," and his acts must be recognized.

The parts of the depositions moved to be erased, stricken out, or " expunged," would have been competent testimony to go before a jury. Pedigree, marriage, &c., &c., may always be proved by hear-

Moody *against* Walker.

say, reputation, common understanding, &c. &c. But if irrelevant or incompetent, the court would not strike it out; but give it no weight in the hearing. It would only consider such parts of the testimony as were relevant and legal; and mentally and in fact exclude the residue from any weight in its decision. The court's refusing to exclude those parts of the deposition, even had it been upon an issue submitted to a jury, could not be made available in error, when the record shows, as it does in this case, sufficient evidence besides to justify the decree rendered.

The first, sixth, and seventh assignments of error, reach the same point, which is, is there equity contained in the bill? By our statute then in force, a party is entitled to relief in Chancery "in all cases where a remedy cannot be had in the ordinary course of the common law proceeding." See *Pope, Steele, and McCamp. Dig.*, p. 108, *sec.* 1. In this case a state of facts is presented, which shows that no relief could be obtained at law; and that Moody had once, and it was believed would again, not only evade ordinary, but even the most extraordinary process of the common law. The complainant below was entitled to a specific enforcement of his rights, and no process at law would give it: therefore, if entitled to relief, he had no efficient or probable remedy but in Chancery.

The claim set up by William C. Walker under the will of his grandfather, is one which properly belongs to the class of contingent executory bequests or devises. Such a devise of the inheritance upon a contingency to happen in the extent of a life, or lives, in being, and twenty-one years, and the fraction of another year, to reach the case of a posthumous child, has been uniformly allowed; and the same rule equally applies to chattel interests. 4 *Kent. Com. (edition of* 1830,) 262; 3 *P. W'ms* 258; 7 *Tr. Rep.* 100; 2 *Bl. Com.* 174; 6 *Cruise, title* 32, *Devise ch.* 17.

A valid executory devise, it is admitted, cannot exist under an absolute power of disposition in the first taker. *Vide* 4 *Kent. Com.*, 264.

But in the case before the court, no such power of disposition—power to sell, devise, or otherwise alienate the property—existed in Nancy Walker, the first taker. She by law had no power to make a will of slaves, or sell them, until she arrived at twenty-one years of

age—previous to which time, the contingency by which her brother was to take, must happen, or not at all.   See 7 *J. J. Marshall's Rep.*, 58, *Walton's heirs vs. Walton's Ex'r;* 2 *Brown and Morehead. Dig. Ken. Statutes.*

If an executory devise be limited to take effect after a dying without heirs, or without issue, the limitation is held to be void, because the contingency is too remote, as it is not to take place until after an indefinite failure of issue.   4 *Kent. Com.*, (*Ed.* 1830,) 267.

But if the testator meant that the limitation over was to take effect on failure of issue living at the time of the death of the person named as first taker, then the contingency determines at his death, and no rule of law is broken, and the devise is good.   4 *Kent. Com.*, 268, *et sequentes.*

An indefinite failure of issue is correctly defined to be, a failure of issue, whenever it shall happen, sooner or later, without any fixed, certain, or definite period within which it must happen.   4 *Kent. Com.* (*Ed.* 1830,) *p.* 268, *et seq.*

A definite failure of issue is where a precise time is fixed by the will for the failure of issue, as in the case of a devise to A, but if he dies without lawful issue living at the time of his death.   *Ib.*

In the case before the court, it was the obvious and clear intention of the testator, (and wills must be construed by the testator's intention, and liberally,) that the contingency should arise upon Nancy's dying without heir lawfully begotten of her body and alive at her death; to put any other construction upon the language of the will, would be forcing the words used by the testator to a meaning not usually attached to such phraseology; and the meaning of words used in such instruments must not be taken in their technical sense, but in the sense applied to them in common parlance, and generally conveyed by their use in the ordinary transactions and conversations of men.   That such was the intention of the testator is strengthened, and conclusively settled, by his fixing the precise period within which the contingency must happen, not only to the life of the first taker, Nancy, but within twenty one years—before she arrived at lawful age.   The testator then evidently intended, that should Nancy die before she arrived at twenty-one years of age, and without heir lawfully begotten of her

Moody *against* Walker.

body living at her death, then Thomas should have that portion of his estate devised to her. If so, the contingency is precisely fixed, and Thomas could take as a contingent executory devise, under all the decisions in England and America, made upon the principles of the common law. If the meaning should be construed to be, if she died without heir lawfully begotten of her body, generally, whether dead or living at the time of her death, it is still certain, and the devise valid, because the period is limited to her arrival at lawful age—twenty-one years. Upon the latter supposition, if she had an heir born of her body within that period, Thomas' estate would be cut off, but if she had none and died within the limited period, then Thomas succeeds to her part of the estate. The contingency is definite, certain, and fixed, by either construction, and the proof is conclusive that it did happen. 4 *Kent. Com.*, 270, 271, 272, 275; 5 *Day*, 517; 3 *Halsted's Rep.* 29; 16 *Johns. Rep.* 382.

But it is urged by the appellant that as Thomas died before Nancy, that the son and heir of Thomas, who is the complainant, is cut off— that it is a personal right which Thomas as survivor might have enjoyed, but it does not descend to his son and heir. This position we contend is wholly untenable. Any vested right in the father may descend to the son. And the rule of law in such case is, "that the interests of the first and subsequent takers, *quodam modo vest uno instanti;* so that if the substituted legatee die before the contingency happens, upon which he is to succeed to the legacy, his representative will be entitled to it so soon as the event shall take place." And that if "a bequest be made to A, but if A died under twenty-one, or without leaving children or issue, to B; although B happen to die before A, B's personal representative would be entitled to receive the legacy," &c., "on the ground of its being vested in right in B, previously to his decease." *Vide* 1 *Roper on Leg.* (*White's Ed.* 1829,) *p.* 401 *et seq.*; 2 *Attk.* 216; 1 *Roper on Leg.* (*Edition of* 1804,) *p.* 453, 454, 151, 186; 2 *Roper on Leg.* (*Ed.* 1804) *p.* 393 *to* 399 *inclusive.*

In bequests of personal property, the rule of construction will more readily, than in devises of land, be made to yield to other expressions or slight circumstances in the will, indicating an intention to confine the limitation to the event of the first taker dying without issue at the

time of his death. The courts, with avidity, lay hold of any circumstance, however slight, and create almost imperceptible shades of distinction, to support limitations over of personal estates. 4 *Kent's Com.* 276; 1 *T. R.* 593.

The American courts have extended this disposition and liberality of construction farther than the English. *Ib.;* 10 *J. R.* 12, *Moffat's Ex'rs vs. Strong,* 2 *Munf. Rep.* 479.

Nancy Walker's will being void, (laying aside complainant's right under his grandfather's will,) William C. Walker is entitled to her estate as her heir at law; as none beyond a life estate could accrue to Mrs. Moody, her mother, as she derived the property from her father; and none at all to Moody, the appellant, Mrs. Moody being dead. And if this court should believe that there are other heirs at law, of which we contend there is no evidence, the utmost it could do, even upon this remote contingency, would be to reverse the decree, and remand the case with instructions for the bill to be amended, and the case retained there for that purpose. Under the general prayer of relief, any specific relief may be decreed.

But we rely mainly and confidently on the validity of the contingent executory devise contained in the will; and that complainant stood in place of his father, and inherited all his rights.

Even if the court below erred in overruling defendant's motion to dismiss the suit before answer filed, it was cured by Moody's answering over. If he intended to rely upon that error, he should have suffered final decree to go against him without further defence. His answering over waives any right that he might have had under decision on the motion.

LACY, *Judge,* delivered the opinion of the court:

The question to be decided is, what interest or estate did Nancy Walker take in the slave, Sarah, by the will of William Walker, deceased? Did she acquire the absolute right of property, or only a a life estate, subject to be divested by the happening of the contingency mentioned in the will? The language of the will is, "I give and bequeath to my son, Thomas Walker, my negro boy, Billy. ITEM. I give and bequeath to my daughter, Nancy Walker, my

negro girl, Sarah. It is my will and desire that, after the death of my wife, all the personal estate I have, but her, with the increase thereof, be equally divided between my son, Thomas Walker, and my daughter, Nancy; and if either the said Thomas or Nancy Walker die before they arrive at lawful age, or without heir lawfully begotten of their body, that the surviving one have that part of my estate bequeathed to the deceased one."

The object of the courts of all countries, in the construction of wills, is to arrive at the true and real intention of the testator. To this end all the rules upon the subject necessarily tend, and upon it they are all made to turn. When words of bequest pass a present interest, the share of the first devisee vests *sub modo*, subject to be divested on a contingency. 1 *Roper on Legacies* 403; 3 *Meriv.* 340, *Shepherd vs. Ingram, Amb.* 448.

If a legacy be given to a devisee, and no time of payment be expressed in the will, or if it be directed to be paid at twenty-one, and if he die before that age, the legacy will vest in the mean time, subject to be divested in the event of his dying under the age of twenty-one. *Lyon vs. Mitchell,* 5 *Mad.* 446; *Deane vs. Test,* 9 *Ves.* 147, 152; *Davidson vs. Dallas,* 14 *Ves.* 576. In *Fonereau vs. Fonereau,* 3 *Atk.* 645, the will was, I give my grand-son, Claudius F., when he shall attain twenty-five, £1000, which I empower my executors to lay out in such securities as they shall think fit; and the interest and income thereof to be for and towards his education, and also a part of the principal to put him out as an operative, and the remainder to be paid him when he shall attain to twenty-five, and not before. In this case, Lord HARDWICKE held, that the legacy vested immediately upon the death of the testator, though the legatee died before he attained the age of twenty-five years. The legacy was directed to be paid upon his reaching a certain age; that time was inserted, not for the purpose of postponing the vesting, but the payment of the legacy. When interest is given, it vests the principal; and the case above cited fully proves this rule. *Fonereau vs. Fonereau* was said to be a strong case of a vested and a transmissible legacy, notwithstanding the dying before twenty-five. *Green vs. Pigot,* 1 *Brown's Ch. Cas.* 104, 105. In *Monkhouse vs. Holme,* 1 *Brown Ch. Cas.* 298, Lord LOUGHBOUGH

24

remarked, " I rather take the rule to be, that when the time is annexed, not to the form, but to the substance of the gift, then the legacy lapses by the death of the legatee." In *Steadman vs. Palling* 3 *Atk.* 423, the rule is laid down, that if a legacy be devised to one generally, to be paid or payable at the age of twenty-one, and the legatee die before that age, yet the interest is vested in the legatee, and the executor may recover it. It is said to be due presently, but payable in future; the time being annexed to payment, and not to the substance of the legacy. But if a legacy be devised to a person at twenty-one, or when he shall attain the age of twenty-one, and the legatee dies before that age, the legacy is then said to be lapsed; for in such a case time would be of the essence of the legacy, and would therefore govern the bequest. In *Van vs. Clark*, 1 *Atk.* 510, the Lord Chancellor states the general doctrine to be, that a legacy given out of a personal estate, payable at a certain time, or if given at a certain time, and interest in the mean time, such a gift is a vested legacy. The rule is held be otherwise as to legacies out of real estate; for there, if the legacy is made payable at a certain time, and the legatee dies before that time, it, of course, is a lapsed, and not a vested legacy. The Master of the Rolls, in delivering the opinion in *Hanson vs. Graham*, 6 *Ves.* 239, declared that an absolute gift of interest, according to the established usage, vested the legacy, and that it could not be divested if the absolute right of property passed by the bequest. *May vs. Wood.* 3 *Bro. Ch. Cas.* 471; *Love vs. L'Estrange*, 3 *Bro. P. C.* 337; *Cave vs. Cave*, 2 *Vern.* 508; *Robinson vs. Fitzherbert*, 2 *Bro. C. C.* 127; *Paterson vs. Ellis*, 11 *Wend.* 269, '70, '71, '72, '74. In *Paterson vs. Ellis*, the testator appropriated to his infant daughter a specific legacy, and directed it to be vested in her name, and the whole principal and interest to be at her own free and absolute disposal, upon her attaining the age of twenty-one years. The Court of Errors, of New-York, held this to be a vested legacy, although the words " give and bequeath" were not used in the will. And Chief Justice SAVAGE, in delivering his very able and learned opinion in that case, sums up the whole doctrine as follows: " if there is a gift of the principal, unconnected with the time of payment, then the legacy vests; if there is no gift, except at the time of payment,

then it does not vest until the time arrives; and if it never arrives, the legacy is lapsed."

In this case there can be no doubt that the legacy vested the slave, Sarah, in Nancy Walker immediately upon the death of the testator. The will gave her the principal, as well as the interest of the property, by express words. And that being the case, according to all the authorities, and the reasons upon which they are founded, the legacy of course vested by the will.

The question still remains to be answered, what estate passed to her by this vested legacy? Did she take an absolute interest in the property, or only a conditional fee; and if the latter, is the limitation over valid by way of executory devise? The appellant contends that the devise over is void, first, because it is repugnant to the absolute gift of the property; and, secondly, because the limitation over is too remote to create an executory devise. The complainant insists, the legacy being once vested, the limitation over contains a valid executory devise, and that, therefore, after the death of Nancy Walker, the property passed to, and became vested in William C. Walker, the legal heir and representative of Thomas Walker, deceased. It is essential to the validity of an executory devise, that it cannot be defeated by the first taker. If the absolute right of property is given to the first taker, the limitation over is void. For if a legatee possesses the absolute right of property, he certainly has the power of disposing of it in any way he may think proper, and, therefore, he might defeat the devise or limitation over. If a testator gives property absolutely, in the first instance, to a legatee, he cannot, afterwards, subject it to any limitation or provision whatever, as for example, that he shall hold it for a life, or that he shall not spend it in a particular manner. The absolute right of ownership carries with it full power of disposing of the property. The case of the *Attorney General vs. Hall*, 8 *Viner* 103, expressly decides this point. So also, the case of *Flanders vs. Clark*, 1 *Ves. Sen.* 9; *Butterfield vs. Butterfield*, 1 *Ves. Sen.* 134, and *Bradley vs. Peixotto*, 3 *Ves.* 324: the same doctrine is re-asserted and affirmed in *Ross vs. Ross*, 1 *Jac. and Walk.* 154, decided in 1819. Chancellor KENT has stated the principle, contained in all the authorities, very briefly and comprehensively in the second volume of his

Commentaries, at pages 352, 353, 354. The rule there laid down is, "that chattels or money may be limited over after a life interest, but not after a gift of the absolute property, nor can there be an estate tail in a chattel interest, for that would lead to a perpetuity, and no remainder over can be permitted on such a limitation; that it is a settled rule, that the same words which, under the English law, would create an estate tail as to freeholds, give the absolute property as to chattels." In *Paterson vs. Ellis*, 11 *Wend.* 299, Senator Edmonds uses this emphatic language, "that when the use of a chattel is devised to one for life, with remainder to another, the demise of the remainder is valid. The devise for life must be clear and explicit, and the intention of the testator, to give only a life estate, must be undisputed; but where the devise is such, that the property and the chattel becomes absolutely vested in the first taker, any attempt of the testator afterwards to control or restrict the power of disposing of it, is an unwarrantable interference with the absolute right of property, already granted, and consequently void."

Testing the case now before us by these principles and authorities, it will be readily perceived that Nancy Walker acquired, by the will of her father, the absolute right of property of the slave in controversy. The testator does not limit the devise to a term of years or for life. He does not bequeath to her the use of the property either by implication or by any express provision. If the use of the chattel is only given in this case, the testator has certainly not expressed that intention in clear or explicit terms. Neither has he placed that intention beyond dispute by the terms of the bequest. Having failed to do this, the legal presumption is, he intended to vest in the first taker the absolute right of property. Again, this intention is made self-evident by the express words of the will. The testator first makes a disposition of certain portions of his estate to his wife and children, and he then declares, "I give and bequeath to my son, Thomas Walker, my negro boy, Billy. Item. I give and bequeath to my daughter, Nancy Walker, my negro girl, Sarah." Then follows the limitation over. The terms used in this bequest are surely sufficient to pass the absolute right of property. They are such as are usually employed in testaments for that purpose, and they are brief, explicit, and compre-

Moody *against* Walker.

hensive, conveying the whole and entire interest of the two slaves, bequeathed to Thomas and Nancy Walker. If it was not the intention of the testator to pass the absolute right of property, why did he not limit and restrict its use? His failure to do so is conclusive evidence that his object and intention was to convey the entire right, and that being the case, the law will not permit him afterwards to control and restrict its ownership, or to interfere, in any manner, with the absolute right of property, previously granted. We, therefore, consider the limitation over void, because it is repugnant to the first clause of the will, which vested the whole and entire interest of the slave, Sarah, in Nancy Walker. Moreover, we hold the remainder over to be void, by reason of its remoteness, as being repugnant to the principles of natural right and justice, and alike opposed to the policy of the common law, and the genius of our free and liberal institutions.

The ancient common law was favorable to liberty, and hence it imposed few restraints, if any, upon the alienation of property. Upon the introduction of the feudal system entailed estates were first established. The policy and object of that system was to create and keep alive perpetuities. This the common law abhorred; and hence arose a fierce and violent contest between the supporters of restraints, in favor of the non-alienation of property, and the friends of its free and unfettered enjoyment, which lasted for centuries. Finally the rigor and injustice of the feudal system yielded to the general sense of the nation, and property became alienable, first, by deed, and afterwards by will. And in the case of the *Duke of Marlborough vs. Earl Godolphin*, 1 *Edin.* 417, Lord NOTTINGHAM well remarked, " that the spirit of English liberty would not submit to the statute of entails," "and Westminster Hall, siding with liberty, found means to evade it." The celebrated statutes of 32, 34 and 35, Henry VIII, and 29 Charles II, finally completed the triumph of the alienation of property by will, and these statutes have been substantially re-enacted by most, if not all the States of this Union, and they now constitute the ground work of all our statutes on wills. The principles established by our revolution swept away the doctrine of primogeniture, and that of entailed estate, and left the citizen in the full and free enjoyment of his property, with the power of disposing of it, in any manner he might

think proper. An executory devise " is a disposition, *by will*, of a future interest in lands or chattels, not to take effect at the testator's death, but limited to arise at some future contingency." A more limited definition of it is " such a limitation of a future estate or interest in lands or chattels as the law admits in the case of a will, contrary to the rules of limitation, in conveyances at common law." All future limitations over, in wills, which are consistent with the rules of the common law, respecting contingent remainders in a deed, are, in a will, construed contingent remainders. 2 *Fearne* 1, 2. An executory devise cannot be barred by a fine or a common recovery, and, therefore, to prevent perpetuity, it became necessary to prescribe the bounds and limits beyond which it should not extend. The time to which they were limited was definitely settled in *Stephens vs. Stephens*, and that decision received the sanction of the Court of Chancery, and of the Judges of the King's Bench. According to the resolution of that case the devise over must vest within the compass of a life or lives in being, and twenty-one years and nine months thereafter. But should an executory devise be not limited to an event within the prescribed period of time mentioned, as upon an indefinite failure of issue, it was void, by reason of its remoteness, as favoring the doctrine of entailed estates, and thereby creating perpetuities. "It is of no importance how the fact turns out to be; it is void at the commencement, if the event on which its existence depends may, by possibility, extend beyond the duration of the time prescribed." 6 *Cruise, tit. Devise*, 32, *ch.* 17. In order to understand fully the reason of the courts in deciding a peculiar class of cases arising upon executory devises, it is necessary, briefly, to define what is meant by a fee simple, qualified, base, or a conditional fee, and fee tail. A fee simple is " a pure inheritance, clear of any qualification or condition. It gives a right to all his heirs generally, provided they be of the blood of the first purchaser, and the blood of the person last seized." It is the greatest estate or interest that a person can have in lands or tenements, and it carries with it unlimited power of alienation. " A qualified, base, or determinable fee, is an interest which may continue forever, but the estate is liable to be determined by some act or event, circumscribing its continuance or extent." A conditional fee is one which restrains

the fee to some particular heirs, exclusive of others; as, to the heirs of a man's body, or to the heirs male of his body. This was, at common law, construed to be a fee simple, upon condition that the grantee had the heirs prescribed. If the grantee die without such issue, the lands revert to the grantor. By having issue, the condition was supposed to be performed for three purposes, to wit: to alien, to forfeit, and to charge. By the performance of the condition the grantee could, by alienation, not only bar his own issue, but the possibility of reversion to the grantor. And this alleged breach of the grant was the occasion of the statute of Westminster, 2nd 13 Edward I, ch. 1, commonly called the statute *De Donis*, which recited the evasion of the condition of the gift by this subtle construction, and consequent alienation, going to defeat the intention of the donor. The statute enacted, in substance, that the will of the donor should be observed. The land was declared to revert if there never was issue, if such issue failed, or if the heirs of the body of such issue failed. The statute was understood as confirming the estate to the issue of the grantee until such issue should fail. There could be no reversion so long as the issue of the grantee had issue *ad infinitum*. Whenever there was an absolute failure of issue, then the land reverted to the original grantor. The donee had no power to alienate the land, or bar his issue so long as there remained a probability of issue. Hence, failure of issue, and dying without issue, meant not only failure of the grantee to have issue, but an indefinite failure of issue generally, and such, accordingly, was the construction put upon these words of the statute. Under this statute the grantee had no longer a conditional fee, but his interest was denominated a fee tail, that is, a fee from which the general heirs are entirely cut off. The true policy of the common law was deemed to be overthrown by this statute, for it went to establish perpetuities in estates. Several ineffectual attempts were made in parliament to get rid of it, but it was not until Talturam's case, 12 Edward IV, that relief was obtained against this great national grievance, and it was effected by a bold and unexampled stretch of judicial power. The Judges in that case resolved upon consultation, that an estate tail might be cut off and barred by common recovery, by reason of the intended recompense,

that the recovery was supposed to give to those who were entitled to receive the estate. These recoveries are now only considered as simple conveyances on record, invented at first, by the courts, to give a tenant in tail the absolute power to dispose of his estate. A common recovery removes all limitations or restraints upon entailed estates, and passes a pure and unqualified fee by operation of the conveyance. It is the only mode of conveyance by which a tenant in tail can effectually bar his issue and all subsequent remainders. "For if he conveys by deed he conveys only a base fee, which will not exclude his heirs. If by fine, he only bars his heirs, but not subsequent remainders. Common recoveries were, for some time, sought to be eluded by fettering the estates attempted to be conveyed by these restraints and conditions; and it was against these restraints and conditions that Lord BACON pithily and justly remarked, " that it was better for the sovereign and subject that men should be in hazard of having their houses undone by unthrifty posterity, than to be tied to the stake by such perpetuities."

The validity of executory devises was finally settled in the case of *Rolles vs. Brown, Cro. Jac.* 590; and it was then decided that a fee, might be limited upon a fee, by way of executory devise, and that such limitation could not be barred by a common recovery. That case was silent as to the bequest by devise of a chattel interest. In the case of the *Duke of Norfolk,* 3 *Chan. cases,* 1 *Pollex.* 223, the subject of executory devises, as upholding the doctrine of perpetuities, was profoundly and elaborately discussed. There was a difference of opinion between the three Judges that tried that cause, and Lord Chancellor NOTTINGHAM. The question arose upon the trust of a term of years upon a settlement by deed, and it was whether a limitation over, upon the contingency of the devisee dying without issue, was valid or not. The Judges were against the limitation over, and declared it to be void, upon the ground of its favoring perpetuities. The Chancellor insisted that future interests, springing on executory trusts and remainders, did not fall within the reason and policy of the law which abhorred perpetuities, and therefore they were valid, and were necessary to provide for the exigencies of families. The case was taken up to the House of Lords, and the Chancellor's opinion was there affirmed. And the

Moody *against* Walker.

principle of that case extended to a term of years, equally with estates of inheritance. Since the decision of this case, the legality of executory devises has never been questioned as to estates of inheritance, nor as to chattel interests, provided they extend to no greater a period of time than a life or lives in being and twenty-one years, and the fraction of another year, so as to include the case of a posthumous child. *Scatterwood vs. Edge*, 1 *Salk.* 229; *Snow vs. Cutler*, 1 *Lev.* 135; *Leddington vs. Kine*, 1 *Ld. Raym.* 203; *Stephens vs. Stephens*, *Cas. Tem. Talbot*, 228; *Wood vs. Saunders*, *Pollex.* 35.

The reason of the invention of executory devises was to support the will of the testator when it was evident a contingent remainder was attempted to be created, but could not operate as such by the rules of the common law. An executory devise differs from a contingent remainder in three material points. 1st. It needs not a particular estate to support it. 2d. That by it a fee simple or any less estate may be limited after a fee. 3d. That by this means the remainder of a chattel interest may be limited after a particular estate for life has been created. The first case happens when a devise of a future interest is made to depend upon a contingency. In such a case there is in effect a contingent remainder, without any particular estate to support it, commencing *in futuro*. This limitation, though it will be void by deed, because there can be no livery of seizin, is nevertheless good by way of executory devise. The second case is where a devisor passes all his estate in fee, but limits the remainder thereon to commence upon a future contingency, which may, by possibility, never occur within the time prescribed by law. The third case is when an executory devise of a term of years may be granted to one man during his life, and afterwards limited over in remainder to another. This could not be done by deed, upon the principles of the common law; for the first grant for a term of years to a man for life, was deemed to be a total disposition of the whole estate—a life estate being a higher and larger interest than a term of years. By deed a fee cannot be created without words of inheritance, if the terms used in the deed convey the whole interest of the grantor, he at the same time being seized of an indefeasible estate of inheritance. By will a fee may vest without words of inheritance, and an estate tail may be created by

executory devise without words of procreation. An executory devise is considered in the light of a limitation of a use, and hence it is to be construed with as much favor and benignity as is consistent with the rules of law. The testator cannot make a devise contrary to law, for that would enable a private man, by his own judgment, to set aside the supreme will of the State. When technical phrases or terms of art are used, it is fair to presume that the testator understood their meaning, and that they expressed the intention of his will, according to their import and signification. When certain terms or words have by repeated adjudication received a precise, definite, and legal construction, if the testator in making his will use such terms or similar expressions, they shall be construed according to their legal effect; for, if this was not the case, titles to estate would be daily unsettled, to the ruin of thousands. It is all-important to the interest of society, that the rules of property should be definitely settled, and that they should possess uniformity and consistency. *Ide vs. Ide,* 5 *Mass.* 500.

We have now arrived at that point of our inquiry, when the terms "dying without issue," "dying without leaving issue," "dying without leaving issue lawfully begotten," or "dying without heirs lawfully begotten of their body," have to be interpreted and explained. Upon this subject there has been a greater diversity of opinion among the eminent and distinguished jurists of our own country, as well as of Great Britain, than upon almost any other branch of the science of law. The most illustrious names are found directly and warmly opposed to each other, and the discussions and decisions upon the point, have given rise to the display of extraordinary abilities and learning. As the question depends mainly upon the weight of authority, it necessarily imposes upon us the duty of reviewing a few of the most important cases that have been adjudged upon the point. In the course of our examination we shall draw largely upon the opinion of Chief Justice SAVAGE in the case of *Paterson vs. Ellis* before quoted. It cannot be denied, that were the question to be settled upon the common acceptation of the terms used in the will, the testator meant issue living at the death of his daughter. If the language, however, used by him, has acquired by a series of adjudications, a legal technical meaning, and if that should be wholly different from the common

acceptation of the terms, then is our duty to give to those terms their precise legal meaning; or otherwise, as many learned judges have said, we might unsettle many estates held under conveyances or wills drawn with special reference to the legal construction given to the language used. Lord Kenyon in delivering the judgment in *Porter vs. Bradley* said he considered the case of *Pells vs. Brown* as the foundation or *magna charta* of this branch of the law. As we will have occasion to return to this case hereafter, we shall pass over it for the present.

The proper words in a grant or a devise to create an estate tail, are "to the grantee, and to the heirs of his body lawfully begotten." Such a devise of land in England conveys an estate for life in the grantee, and the inheritance to his children. Such a devise there of a chattel interest would pass the absolute right of property. The law in both cases abhors perpetuities. A perpetuity in land may be barred by a fine or common recovery, but not so as to personal estate, and therefore in regard to personalty, a perpetuity cannot be prevented, but by declaring that such a devise gives the absolute right of property. It is well settled that the devise of land for life, or in fee, with re- mainder *over, if the devisee die without issue, or without leaving issue, will be a devise in tail to the first taker. Paterson vs. Ellis,* 11 *Wend.* 279; 6 *Cruise,* 290; *Doe vs. Ellis,* 9 *East,* 382. The words dying without issue, or without leaving issue, have always been held in such a devise to be an indefinite failure of issue, and the rule of construc- tion is the same with respect to real as to personal property. In *Forth vs. Chapman,* 1 *P. Wm's.* 663, Walter Gore devised the residue of his real and personal estate in trust for use of his nephews William and Walter after making several other bequests, he gave certain free- holds and chattels to William; and, if either of his nephews, William or Walter, should depart this life and leave no issue of their respective bodies, then he gave the leasehold premises to the children of a brother and sister. Upon this will the question arose whether the limitation over of the leasehold premises to the children was void as being remote. It was decided by the Master of the Rolls that the devise over was void: afterwards the cause coming up upon an appeal before the Lord Chancellor the decree was reversed, and it was de- cided that the words " die without leaving issue," meant issue living

at the time of his death, which made the devise over good, and that the words " die without issue," as to the freehold, meant a failure of issue at any time, and with respect to the leasehold, the same words should be taken to signify dying without issue at their death. In *Atkinson vs. Hutchinson*, 3 *P. Wm's*, 358, and in *Sheffield vs. Orrery* 3 *Atk.* 282, the same distinction was taken, as to real and personal estate, and this was followed up by *Denn vs. Shenston, Cowper*, 410. This is denied by Lord KENYON in *Porter vs. Bradley*, as the devise contained the words " behind them," which controlled the general terms of the devise. In *Daintry vs. Daintry*, 6 *T. R.* 313, Ld. KENYON intimated that the words dying without leaving issue of his body lawfully begotten, created an estate tail in the realty, but the devise over of the personalty was holden to be good. The doctrine of *Forth vs. Chapman*, and the distinction there taken, was supported by *Crook vs. Devandes*, 9 *Ves.* 203, where it was held that the words " leave no such heirs," meant at his death, as to personal property. These cases were all decided upon the authority of *Forth vs. Chapman*, and they are now entirely overruled, and the distinction between the words " die without issue," or " without leaving issue," or " heirs lawfully begotten," as applied to real and personal estate, is entirely exploded by a series of adjudicated cases of the highest weight and authority. The rule is now well settled in England, and Ld. ROSSLYN, in *Chandless vs. Price*, 3 *Ves.* 99, has correctly stated " that where the words used would give an estate tail in real estate they give the absolute property in personalty, unless you can find in the will something to show that the testator intended to tie it up." The doctrine here established is the same as laid down in the case of *Chatham vs. Tothill*, 6 *Bro. P. C.* 450. The words of the devise over, in the latter case, were " for want of such issue," and there is certainly no difference between that expression, and " leaving no issue," as used in *Forth vs. Chapman*. In *Boehm vs. Clark*, 9 *Ves.* 580, Sir WM. GRANT says, " that the Judges were inclined to hold ' die without issue' to mean issue at the death of the person named, but that he considers the rule well settled since the case of *Beauclerk vs. Dormer*, and that these words, without something to limit them, must have their legal signification, that is death without issue, or an indefinite failure of issue,"

Moody *against* Walker.

and he cites a great number of cases to prove this position. *Glover vs. Strothoff*, 2 *Bro. C. C.* 36; *Attorney General vs. Bailey, ib.* 558; *Doe vs. Cooper*, 1 *East.* 230; *Tenny vs. Agar*, 12 *East*, 354. *Romilly vs. James*, 6 *Taun.* 264. The same doctrine is so stated by Fearne in his learned treatise on executory devises and remainders, 485.

We are well aware that the Supreme Court of Kentucky have followed the case of *Forth vs. Chapman*, and in *Moore vs. Howe*, 4 *Mon.* 202, have decided that the words die without leaving issue mean a failure of issue at the death of the first taker, and also that the words are to be construed in one sense when applied to real, and in another when applied to personal estate. And in *Brashears vs. Macy*, 3 *J. J. Marshall*, 90, they go so far as to declare that in a devise of personal estate the expression dying without issue is invariably interpreted to mean, *ex vi termini*, issue leaving at the death of the first taker. See also *Mosely vs. Corbin*, 3 *Marsh.* 289.

The authorities we have already cited seem to us to demonstrate the incorrectness and fallacy of the Kentucky decisions. Besides they have been expressly overruled by most of the courts of our own country, and by the Supreme Court of the United States. *Ide vs. Ide*, 5 *Mass.* 500; *Dallam vs. Dallam* 7 *Harr. and Johns.* 220; *Newton vs. Griffith*, 1 *Harr. and Gill*, 111; *Lydnon vs. Lydnon*, 2 *Munf.* 269; *Carter vs. Tyler*, 1 *Call.* 143; *Hill vs. Burrow*, 2 *Ibid.* 342; *Bell vs. Gillespie*, 5 *Randolph*, 273; *Broadus vs. Turner*, *Ibid* 308, *Denn vs. Ward, Cam. and Nor.* 202; *Cruger vs. Hayward*, 2 *Desauss.* 94; *Irwin vs. Dunwoody*, 17 *Serg. and Rowle*, 61; *Casky vs. Brewer*, 17 *Ib.* 441. The position so broadly assumed in *Brashears vs. Macy* has no support any where. It is no where determined that there is any such distinction when the general words "die without issue" are used, between a devise of real and one of personal estate. In *Forth vs. Chapman* the word "leaving" was relied on, and so it was in *Atkinson vs. Hutchinson*, and so in *Sheffield vs. Orrery*, and in all the other authorities that follow the rule of *Forth vs. Chapman*. In *Williamson vs. Daniel*, 12 *Wheat.* 568, the testator gave certain negroes to his grandson, and certain other negroes to his grand-daughter, and then declared that if either of his grand-children die without a lawful heir of their bodies, that the other should have its estate. The court said

that these words converted an absolute estate, previously given, into an estate tail, and if so, as slaves are personal property, the limitation over is too remote; and further, that there are no words in the will which restrain the dying without issue to the time of the death of the legatee. The remainder is to take effect when either of the immediate legatees should die without a lawful heir of his or her body. The gift in remainder is a gift to the stock, and is limited on a contingency too remote to be allowed by the policy of the law.

In our opinion this vexed and long contested question is conclusively and for ever put to rest by the Court of Errors, in New York, in the case of *Paterson vs. Ellis.*

A definite failure of issue is when a precise time is fixed by the will for a failure of issue, as if the devisee dies without lawful issue living at the time of his death. An indefinite failure of issue is a proposition exactly the reverse, and means a failure of issue whenever it shall happen sooner or later without any fixed or definite period within which it must happen. An executory devise upon a definite failure of issue is valid within the period prescribed by law. But upon an indefinite failure of issue it is void because it might tie up property for generations to come.

We are, therefore, of the opinion that the terms dying without issue, dying without leaving issue, or dying without heirs lawfully begotten of their bodies, all mean one and the same thing, an indefinite failure of issue, and they will not support an executory devise unless there are some other words in the will evidently restricting and limiting their general meaning. The terms " the surviving one," are the only words used in this will which can make this devise over good in its inception, and, therefore, if they can sustain it at all, it must be upon the ground that the testator intended to confine the contingency to the life of Thomas Walker, and if it did not happen in his life time, the property became indefeasible in Nancy Walker upon his death. Thomas Walker married, had issue, and died leaving Nancy Walker still living. The present complainant claims the property in question as the heir at law, and the legal representative, of Thomas Walker, deceased, and alleges that the property became vested in him on the death of Nancy Walker, which happened before she arrived at the

age of twenty-one. Chancellor KENT says "the American cases, without adopting, absolutely, the distinction in *Forth vs. Chapman*, are disposed to lay hold of slighter circumstances in bequests of chattels than in devises of real estate, to sustain the limitation over, and this is the extent to which they have gone with the distinction." The rule will be found to go farther than it is here laid down in many of the modern cases. 2 *Kent's Com.* 286, 353. In *Lillibridge vs. Adie*, 1 *Mason* 236, Justice STORY remarks, "in respect to terms of years, and other personal estate, courts have very much inclined to lay hold of any words to tie up the generality of the expression, dying without issue, and restrict its meaning." The courts, according to *Fearne*, "lay hold, with avidity, of any circumstance, however slight, and create almost imperceptible shades of distinction to support limitations over of personal estates." *Fearne on Executory Devises, by Powell*, 186, 239, 259; *Doe vs. Lyde*, 1 *T. R.* 593; *Dashiell vs. Dashiell*, 1 *Harr. and Gill.* 127. The cases which deny the restricting effect of the term *survivors* have of late years been entirely overruled even as to real estate, much more as to personal property. In *Hughes vs. Sayer*, 1 *P. W'ms* 534, the testator devised his estate to several persons, and upon either of them dying without children, then to the survivor. It was held that the word *children* was equivalent to *issue*, and that it was a devise over of the personal estate, on her dying without children living at the death of the party, and that the court could not regard it in any other sense, because the immediate limitation over was to the surviving devisee. So in *Massey vs. Hudson*, 2 *Meriv.* 130; and in *Wotten vs. Andrews*, 2 *Bingh.* 126. See also *Lampley vs. Blower*, 3 *Atk.* 396.

The question whether a limitation over to the survivor or survivors of two or more persons, or to the other or others dying without issue is confined to a definite or indefinite period of time, has been much discussed of late years in the courts of New-York, and the point is now considered conclusively settled in that State. The first case, *Fesdick vs. Cornell*, 1 *J. R.* 440, was upon a will which declared that if any of the devisees should happen to die without heirs male of their own bodies, then the land should return to their survivors, to be equally divided between them. The court held the limitation over valid, as

*Moody against Walker.*

being on a definite failure of issue, the term surviving devisee restricting the generality of the expression. In *Jackson vs. Blanshan*, 3 *J. R.* 292, the testator, by will, devised all his real and personal estate to six children, share and share alike, but if any of them died before arriving at full age, or without lawful issue, that then his or her or their part or share should devolve upon, and be equally divided among, the surviving children, and to their heirs and assigns forever. That case is precisely similar to the one now under consideration, and the terms of the devises are almost literally the same. The court held the devise over to be valid, and they farther held that the share of one of the sons, who died without issue after the death of some other of the children who left issue, went not to the heirs of the deceased children, but solely to the surviving child. The decision of that case is conclusive of the question now before us; for if the term "surviving one" can be considered as restricting the limitation, then it solely refers to and limits the contingency to the life of Thomas Walker. He dying before Nancy Walker, of course the estate never vested, because the contingency never happened upon which it was made to depend. The same rule of construction was held in *Fairfield vs. Morgan*, 2 *New Rep.* 38; *Denn vs. Kemeys*, 9 *East* 366; *Eastman vs. Baker*, 1 *Taunt.* 174. In *Moffett vs. Strong*, 10 *J. R.* 12, the testator devised his personal property to his heirs, and the proviso was, " if any of my sons should die without lawful issue, that his or their part or parts should be equally divided among the survivors." The court held that the term survivor restricted the limitation and confined it to a definite period of time, for it could not be contended that the estate could vest in the survivor after an indefinite failure of issue, as that event might not happen till long after his death. The whole doctrine was again reviewed in *Jackson vs. Staats*, 11 *J. R.* 334, and *Anderson vs. Jackson*, 16 *J. R.* 382, and in *Wilkes vs. Lion*, 2 *Cow.* 336, in which it was re-affirmed and finally settled. *Richardson vs. Noyes*, 2 *Mass.* 56; *Keating vs. Reynolds*, 2 *Bay* 80. From all these authorities we conclude that the term surviving one is a term of much import, and the better opinion seems to be that it carries with it the idea of the longest liver at the death of the first taker, and that it means a definite failure of issue. It is clear to our minds, from the express words

of the will, that the testator, in the present instance, intended the devise over as a personal benefit to Thomas Walker, and that being the case, the failure of issue, or death under twenty-one years of age of Nancy Walker, must have happened in his lifetime, to have divested her estate in the slave, Sarah, and to have vested it in him. Another rule, equally applicable to the case now before us is, that when there are clear words of gift, creating a vested interest, the court will never permit the absolute gift to be defeated, unless it be perfectly manifest that the very case has happened it was intended the will should happen. *Roper on Legacies* 414, and in *Harrison vs. Foreman*, 3 *Ves.* 209, and *Smither vs. Willock*, it was declared that it must be determined upon the words of the will; there was a vested interest, which was to be divested only upon a given contingency; and the single question is, whether or not the contingency has happened? According to this rule, if legacies be given to A. and B., and if either die during the life of D., then to the survivor living at D.'s death, and both die before D.; as the bequests vested in A. and B. at the testator's decease, subject to a contingency which did not happen, the interests which vested conditionally in the legatees became absolute in both of them, upon the death of the survivor before D. In *Smither vs. Willock*, 9 *Ves.* 233, the bequest was of personal property, and the produce from the sale of real estate to the testator's wife for life, with the remainder as to the capital, after her decease, to be divided among the testator's brothers and sisters, but if any of them died before the wife, their shares were to be distributed among the children. One of the brothers died during the life of the wife without issue; and Sir Wm. Grant declared the share of the deceased brother to be vested, subject to be divested in the event only of his death before the testator's widow, leaving children; which contingency not having happened, the brother's personal representatives were entitled to the estate. In *Sturgess vs. Pearson*, 4 *Mad.* 411, the same principle is asserted. The case was upon a bequest to the devisee for life, and the capital, after her death, to be divided among her three children, or such of them as should be living at her decease, payable at twenty-one. The three children died before their mother, and it was decided that the children took vested interests,

which were only to be divested in the event of there being some, or one of them living at the mother's death, an event which did not happen, for there was not one child in existence at that period. The necessary result of which was, that the personal representatives of the children became entitled to the legacy, upon the death of the tenant for life. A. hath three daughters, and devises to them £300 each, to be paid at the age of twenty-one years, or day of marriage, which should first happen; if either of them should die before the said times, then her portion to be distributed between the survivors. The eldest marries, takes and dies, leaving issue ; the youngest dies before she is either married or attains the age of twenty-one; and the second survives. And the question was, whether the second surviving should have all the portion of the youngest, or whether the children of the eldest should have a share. It was resolved that the second should have the whole of the estate; and the words "equally divided" imply that they should be sharers, if that was to be understood *reddendo singula singulis,* in case two of them had survived. *Wilson vs. Ordeoy* is also directly in point. Where the share of a brother is to go to a surviving brother upon a contingency his issue cannot take; but there must be intestacy. That is the case directly before the court. Here the heirs of Thomas Walker cannot take, because he died before the contingency happened, upon which the estate is made dependent. Of course nothing can vest by the will in his heirs. Nancy Walker dying before she arrived at the age of twenty-one, or without leaving children, the interest vested in her by the will became an estate of intestacy, provided she was incompetent, or failed, to make her will, disposing of the property. *Davidson vs. Dallas,* 14 *Ves.* 572; *Kilpatrick vs. Kilpatrick,* 13 *Ves.* 476; *Hulbert vs. Emerson,* 16 *Mass.* 241; *Jackson vs. Blanshan,* 3 *J. R.* 292; *Moffet vs. Strong,* 10 *J. R.* 12. In *Lion vs. Burtiss,* 20 *J. R.* 488, where the devise was of a separate property to each of two sons, and if either should depart this life without lawful issue, his share or part to go to the survivor. Chief Justice SPENCER said, " the surviving son was to inherit that part devised to the son who should first die without lawful issue, thus clearly denoting an intention that the surviving son should be personally benefited by enjoying the

Walker *against* Bradley.

estate which his brother had left without issue to inherit it." See also *Jackson vs. Thompson,* 6 *Cow.* 178; *Pelletreau vs. Jackson,* 11 *Wend.* 121. The decisions of the courts of New-York have been affirmed in the Supreme Court of the United States in the case of *Jackson vs. Chew,* 12 *Wheaton* 153; and of *Waring vs. Jackson,* 1 *Peters* 570. The rule, as above stated, may now be considered as the established law of lhe land; and in *Wotten vs. Andrews,* 1 *Bing.* 126, it is expressly laid down, that survivor or survivors mean not the surviving stocks, but the surviving children. If this be the case, then the testator, William Walker, must have intended that his son, Thomas, should not succeed to the estate of his daughter, Nancy, unless he was living, or surviving Nancy, at her death. If the estate, then, never passed to or vested in Thomas Walker, as it clearly did not, because the contingency upon which it depended never happened, to wit, his surviving Nancy, then it necessarily follows, that his son, William C. Walker, cannot take, as the heir at law or legal representative of his father, by virtue of the will now under consideration.

The respondent claims the property in question by virtue of a will, regularly made and executed by Nancy Walker, bearing date the 23d April, 1817, and which was duly proved and recorded in the State of Kentucky, in which she devised the slave and her increase to her mother, Elizabeth Moody, formerly Elizabeth Walker. The question now to be decided is, was Nancy Walker, according to the laws of Kentucky, which must govern in this case, capable of devising the slaves in controversy, she being under the age of twenty-one years. This point is easy of solution. The statute of that State, as well as the adjudications upon it, conclusively shows that no person under the age of twenty-one years is competent to devise real estate or slaves by will. *Walton's heirs vs. Walton's ex'rs, et al.,* 7 *Monroe* 58. This being the case, it clearly follows, that as Nancy Walker is shown by the bill and answer to be about 18 or 19 years of age, when she made the will, she was therefore wholly incapable, by reason of her minority, of conveying any interest whatever to her mother in the slaves by devise. What disposition, then, do the laws of

Kentucky make in regard to such distribution of them? She being incapable of devising them, of course the estate became intestate upon her death.

The act of 1788, of Kentucky, declares that slaves shall descend as real estate, and the act 1785 of that State contains this provision, " that if any person die intestate, the real estate of inheritance shall pass in parcenary to his kindred, male and female, in the following course"—that is to say: " First, to his children and descendants, if any there be. Secondly, if there be no children, or their descendants, then to his father; and thirdly, if there be no father, then to his mother, brother and sisters, and their descendants, or such of them as there be."

The bill and answer expressly shew and admit that Nancy Walker died under the age of twenty-one years, without issue, leaving no father living, and that at the time of her death her mother, Elizabeth Moody, and several of her brothers, or their descendants, were then living; and that since her death, her mother has departed this life, leaving her husband, George Moody, still living.

According to the statute of descents and distributions in force in Kentucky, her mother, Elizabeth Moody, and her brothers and their descendants succeeded to her estate of the slave, Sarah, and her increase, in equal and rateable proportions, share and share alike. And George Moody, who intermarried with her mother, and who is still living, took a life estate in the same as tenant by the curtesy: *Provided,* he had issue born alive of such marriage. The cases of *Pinckard vs. Smith, Lit. Sel. Cas.* 331; *Scroggin vs. Allen,* 2 *J. J. Marshall* 467; *Lytle vs. Rowton,* 1 *Marshall* 515; and *Morehead and Brown's Dig.,* 560 *to* 566, clearly establish the distribution of the estate of Nancy Walker, according to the rule here laid down.

If the view we have taken of this case be correct, the decree of the court below was evidently erroneous, for it passed the whole property in controversy, to the complainant, William C. Walker, in exclusion of her mother and brothers or their descendants, who were entitled to equal distribution of her estate. The decree must, therefore, be reversed with costs, and the cause remanded, to be

proceeded in agreeably to the opinion here delivered, with instructions that a reasonable time be allowed the complainant to make the legal heirs and representatives of Nancy Walker proper parties to this suit, and if he shall fail to do so, that his bill be then dismissed without prejudice.